### 1533.  NORTON v. THE STATE.

1. Where two or more persons join in executing the same false affidavit, they may be jointly indicted for the statutory offense of false swearing.

2. There are cases in which the crime of false swearing may be predicated . of a promissory oath.

(a) Where the managers of an election, at the beginning of the day, take the usual oath binding them to conduct the election honestly and in accordance with law, and thereupon, having held the election, knowingly

and wilfully certify false returns, the official oath and the election papers being transmitted together to the designated officials as required by law, the election managers so falsifying the returns are subject to indictment. for false swearing.

3. The words "primary election" have a definite legal meaning. The words themselves denote an election by ballot, held by some party, organization, or association, for the nomination of candidates for public offices.

4. A militia district or an election precinct may be described in an indictment by its colloquial name; and it is unnecessary to allege the number by which it is also designated.

5. The court properly overruled the demurrers to the indictment.

Accusation of misdemeanor, from DeKalb superior court—Judge Roan.  November 16, 1908.

Argued January 14,—Decided February 9, 1909.

The indictment, which was returned by the grand jury of DeKalb county, charged L. B. Norton, A. H. Flake, and D. P. Phillips with the offense of false swearing, for that they, on June 4, 1908, "being then and there the managers of a primary election, held on the said 4th day of June, 1908, in and for Lithonia district in said county, for the purpose of nominating State and county officers, members of the legislature for said county, and a congressman from the fifth congressional district of Georgia, did wilfully, knowingly, and absolutely falsely swear, after a lawful oath had been administered to them as managers of said election by D. P. Phillips, a notary public and ex-officio justice of the peace in and for Lithonia district of said county, an officer authorized by law to administer said oath, said oath so taken and subscribed being as follows, to wit:  that they the said L. B. Norton, A. H. Flake, and D. P. Phillips would 'fairly, impartially, and honestly conduct the same, according to the provisions of law providing how primary elections shall be held in this State, and in accordance with the laws of this State governing regular elections for the offices of this State,' said oath having been administered and subscribed not in a judicial investigation, when in truth and in fact the said L. B. Norton, A. H. Flake, and D. P. Phillips did not fairly, impartially, and honestly conduct said election, in that they did miscount and incorrectly count the votes cast in said election for one S. A. Morris, the said Morris being then and there a candidate for the nomination for the legislature from said county, by then and there counting for the said S. A. Morris 108 votes as

all the votes cast for the said S. A. Morris in the said election in said district, and they did then and there certify that the said S. A. Morris received only 108 votes in said election in said district as aforesaid, when in truth and in fact the said S. A. Morris did receive more than 108 votes in said election, and did receive as many as 140 votes in said election; and the said L. B. Norton, A. H. Flake, and D. P. Phillips then and there well knew that said S. A. Morris had received more than 108 votes in said election in said district; yet they and each of them did nevertheless then and there wilfully, knowingly, absolutely and falsely swear as above set forth, contrary to the laws of said State, the good order, peace and dignity thereof."

The defendant Norton demurred on the following grounds: "1. Said indictment charges against this defendant no offense under the criminal laws of Georgia. 2. There is a misjoinder of defendants in said indictment; for that the offense of false swearing is an offense that can be committed singly and not jointly, and can be committed in no other way, unless a conspiracy be alleged between the joint defendants; and no conspiracy is alleged in said indictment. 3. The offense of false swearing can only be committed when the false oath or false affidavit has reference to a past or present transaction; and the offense of false swearing can not be predicated upon an affidavit which binds the affiant to do or to perform things to be done and to be performed after making the affidavit. 4. Said indictment fails to allege that said primary election was held by any political party, organization, or association, for the purpose of choosing or selecting candidates for office, and fails to allege what were the rules of the political party, organization, or association holding said primary election, and fails to allege who presided over and conducted said primary election under said rules, and fails to allege that this defendant was a manager of said primary election selected in the manner prescribed by such rules. 6. In law there is no such political division of this State as 'Lithonia district,' and said indictment alleges that said election was held in and for 'Lithonia district.' 7. Because the charge in the said bill of indictment alleges the purpose of said primary election to be that of nominating State and county officers, members of the legislature for said county, and a congressman from the fifth congressional district of Georgia, but does not

allege to what party said candidates belonged, nor for what party said candidates were being nominated, nor that it was any organized political party whatsoever. 8. Because said defendant is charged with miscounting and incorrectly counting the votes cast in said election, the allegation being that defendant with others did then and there count for the said S. A. Morris 108 votes as all the votes cast for the said Morris in the said election in said district, and fails to allege in said connection that the said Morris did receive any more than 108 votes. 9. Because every act alleged in said bill of indictment to have been committed by the defendant is an act alleged to have been committed after the taking of said oath, when, under the law, if the offense of false swearing is committed, it must be as to acts already past. 10. Because under the laws of this State false swearing can not be predicated on an official oath such as is set out in this indictment." To the overruling of this demurrer the defendant excepts.

The following sections of the Code of 1895 are pertinent to the consideration of the questions presented: Penal Code, §258. "False swearing shall consist in wilfully, knowingly, absolutely, and falsely swearing, either with or without laying the hands on the Holy Evangelist of Almighty God, or affirming in any matter or thing (other than a judicial proceeding) by a person to whom a lawful oath or affirmation is administered." Penal Code, §448. "Primary elections shall be construed to mean elections by ballot for the nomination of a candidate or candidates for office, as opposed to nominations by conventions, to run at subsequent elections to be held under the laws of this State, for State, county, and municipal offices." Political Code, §113. "Every political primary election held by any political party, organization or association, for the purpose of choosing or selecting candidates for office, or the election of delegates to conventions in this State, shall be presided over and conducted in the manner and form prescribed by the rules of the political party, organization or association holding such primary elections, by managers selected in the manner prescribed by such rules. Such managers shall, before entering upon the discharge of their duties, each take and subscribe an oath that he 'will fairly, impartially, and honestly conduct the same according to the provisions of the law providing how primary elections shall be held in this State, and in accordance with the

laws of this State governing regular elections for the offices of
this State.' Should one or more of the managers thus appointed
to hold such elections fail to appear on the day of election, the
remaining manager or managers shall appoint others in their stead
and administer to them the oath herein prescribed. The managers
shall take the oath before the notary public, or other officer author-
ized to administer oaths, but if no such officer can be conveniently
had, the managers may administer the oath to each other. Such
oath, after being made and subscribed, shall be filed in the office
of the clerk of the superior court of the county in which such pri-
mary election shall be held, within five days after an election."
Sections 114 and 115 of the Political Code contain regulations as
to how the ballots shall be received and counted, and how returns
shall be made.

*Candlers, Thomson & Hirsch, R. L. D. McAllister, J. D. Kil-
patrick, L. J. Steele, Asa Warren Candler,* for plaintiff in error.

*William Schley Howard, solicitor-general,* contra.

POWELL, J. (After stating the foregoing facts.)

1. Passing by the general demurrer and taking up the special
points presented, we come first to the consideration of the question
as to whether the indictment is defective in that it is joint against
the three defendants. While there is some authority to the con-
trary, the sounder view seems to be that two or more persons may
be jointly indicted for perjury or false swearing. "Plainly, if two
witnesses on the trial of one cause commit separate perjuries, their
indictments must be separate. But should two join in one false
affidavit, in reason they could be jointly indicted. And there may
be other cases within the same principle." 2 Bishop's New Crimi-
nal Procedure, §936. The rationale of allowing a joint indictment
in cases where two or more persons join in the same false affidavit
is admirably presented in State *v.* Winstandley, 151 Ind. 316 (51
N. E. 92).

2. The third ground of the demurrer presents the questions
whether the affidavit which is the basis of the present prosecution
is promissory, and whether the violation of a promissory affidavit
can be made the subject-matter of a prosecution for perjury or false
swearing. Upon this question there is a veritable dearth of author-
ity. Though the case was presented here by able and painstaking
counsel on each side, the plaintiff in error is able to cite on the

question only the cases of U. S. *v.* Glover, 4 Cranch (C. C.), 190 (Fed. Cas. No. 15218), and State *v.* Dayton, 2 Zab. (23 N. J. L.) 49 (53 Am. Dec. 270), while the solicitor-general cites only U. S. *v.* Eddy, 134 Fed. 114, which he himself admits is so distinguishable on its particular facts as to be hardly in point. The Glover case and the Dayton case, supra, are given as authority for the general statements made in 22 Am. & Eng. Enc. L. 682, and in 30 Cyc. 1411, that perjury can not be predicated of an official or other promissory oath, unless by express statutory provision. In Glover's case the circuit judge instructed the jury that a promissory oath could not be the subject of a prosecution for perjury. No authority is cited and no reason is given for the bare statement. The reporter states that the case was an indictment for perjury upon an insolvent's oath that he would "deliver up, convey, and transfer all his property," etc., but he did not deliver up a promissory note which he had obtained after having made oath to his schedule. This precedent, while somewhat in point, is for many obvious reasons but slightly persuasive as authority on the question. The Dayton case is absolutely not in point. The court in that case merely held that in that state there was a statute which by its terms allowed certain designated officers to administer all oaths except official oaths and oaths required to be taken in open court, and which prescribed that perjury might be predicated of oaths so taken before the officers named. The court, in the discussion of a case which did not relate to an official oath at all, threw out the side remark that perhaps the legislature omitted official oaths from the statute for the purpose of exempting officials from the penalties of perjury. Of course this is no ruling as to whether an official oath may or may not be the subject-matter of false swearing.

After making a diligent search for satisfactory authority and finding none, we must decide the case as one of first impression. Our statute against false swearing was intended to punish the making of false oaths in other than judicial proceedings, being in this respect alone distinguished from the statute against perjury. Since perjury is limited to judicial investigations, and since these investigations generally relate to things which have already occurred, it is not remarkable that cases have not arisen involving the question as to whether perjury could consist in the violation of a

promissory oath. The subject-matter of false swearing is not so
limited, and may relate to the future. Morally speaking, it is as
culpable for a person to swear that he will not do a thing, and then
knowingly and wilfully do that thing, as it is for him to swear
falsely as to what he has already done. The element of moral
baseness and wilful corruptness in false swearing, as well as in
perjury, is so predominant in the characterization of the crime
(for it is a non sequitur in cases of this kind to say that the de-
fendant swore to what was not true, hence he is guilty: *Goodwin*
v. *State,* 118 *Ga.* 770, 45 S. E. 620) that it would be judicially
impossible in most cases to infer the existence of the crime in all
its baseness from the mere breach of a promissory oath. For ex-
ample, if a sheriff to-day takes an official oath that he will faith-
fully execute the process committed to him, and a year hence fails
to levy an execution placed in his hands, it would be practically
impossible from a judicial standpoint to correlate his intention in
taking the oath with his intention in breaking it by his neglect,
so as to say that he had wilfully, knowingly, and absolutely for-
sworn himself. This difficulty of sustaining in judicial contempla-
tion the connection between the oath and the violative act in such
a way as to manifest the element of conscious, intentional, and wil-
ful false swearing may justify a statement, in the nature of a
generalization, that false swearing can not be predicated of a prom-
issory oath. But the oath of an election manager in this State
is not in the full sense of the word promissory. He subscribes it
in the early morning before he begins to accept the ballots; and,
when the day is over and the voters' lists, tally-sheets, and re-
turns have been completed, he places the oath with the papers, as
a verification that they are true and correct, and delivers them all
together to the proper official. In a strained sense, the oath of
a witness sworn upon the trial of a case is promissory. He is
sworn, not that he has told the truth, but that he will tell the
truth. He may be sworn at the beginning of a trial, and, in a
lengthy case, may not be called until after many days later, and
may then be questioned as to matters which have occurred since he
was sworn. And yet, since the object of the oath is to verify the
truthfulness of all that he may say upon the witness stand, he is
held under its sanctity and under its sanction, no matter how long
the lapse of time between the administration of the oath and the

delivery of the testimony. If an expert accountant were brought into court and sworn with the usual oath of a witness, and were then required to sit in court and take down a number of items involving calculations and to make up a report from them, and later he should come into court on the trial of the same case, present his report, and say, without further oath, "this report is true," and it should develop that he had knowingly and wilfully made a false report, would not an indictment for perjury lie against him? So, too, in the case of an election manager. The object—in part, at least—of requiring him to be sworn is to give verification to what he shall in his official capacity report as having that day occurred before him in the holding of the election. As in the case of the expert accountant mentioned above, he takes down, from time to time, items, so to speak, and at the end of the day summarizes them and makes a report, which he certifies is true; and this report and this certified summary, made, as they are, under the sanction of the oath he has taken, are transmitted, together with the oath, to the proper authorities. Is the connection between the oath and the election papers returned by the managers less close and direct than it would be if the managers first prepared the papers, the lists, returns, etc., and then attached an oath that they were correct? We think that it is not.

Certainly there is nothing inherent in the nature of a promissory oath that would put it beyond legislative power to make the violation of such an oath criminal. It would seem to be highly expedient in many cases that such oaths should be made effective not only by the restraints of conscience, but by the fear of temporal punishment. An example of a promissory oath, the violation of which is to be punished as false swearing, according to the express language of the enactment itself, is found in the act of September 26, 1883 (Georgia Laws 1882-3, p. 101; Penal Code, §266). That statute provides that each jury commissioner in this State shall, before entering upon the discharge of his duty, subscribe an oath that he will faithfully and impartially discharge the duty of jury commissioner, to the best of his skill and knowledge, and that the deliberations of the jury commissioners, while in the discharge of their duties, he will forever keep secret and inviolate, unless called upon to give evidence thereof in some court of justice or other legal tribunal of this State; and that the clerk shall take a similar

oath. It is further provided that in case any jury commissioner or clerk shall wilfully and intentionally violate. the terms of his oath, "such person shall be guilty of the offense of false swearing."

We will not presume that the legislature, in prescribing an oath to be taken by election managers, intended to put them under only such restraint as the oath might impose upon their consciences. In the nature of things, every incentive to integrity should surround the election manager in the discharge of his duties. Purity of elections is a sine qua non to the perpetuity of free democratic government. He who steals my coat is a thief, but he who steals the good will of my friends from me by falsifying the count, so as to ignore their ballots given in my behalf, is so much more degraded than a thief that in comparison of the respective crimes the simple larceny seems almost respectable. And if the private wrong is great, how much greater is the wrong to the State itself! We believe that the law-making power, by requiring an oath of the men who are to receive and count the ballots in public elections, intended to deter them from dishonesty, not only by moral suasion, but also by the fear of a conviction for false swearing, and the consequent condign punishment in the penitentiary, prescribed for that crime. It may be true that many good men from time to time, in the heat of political zeal, have been guilty of this offense; but this in no wise robs the oath of an election manager of its sanctity, or renders the violation of it any the less reprehensible. Incidentally our decision upon this point as to the oath being promissory covers also the tenth ground of the demurrer, which raises the point that false swearing can not be predicated of an official oath.

3. The fourth, fifth, and seventh grounds of the demurrer raise the point that the nature of the primary election as to which the false swearing is charged to have taken place is not alleged with requisite certainty. It is contended that section 113 of the Political Code, in which the authority for the administration of the oath is found, relates only to primary elections held by some "political party, organization or association," and that it is not alleged that the primary election in question was held by any political party, organization, or association; that the party, organization, or association holding it is not named or designated. The substance of the contention is that not all primary elections are within the protection of the statute, but only such primary elections as are

held by some political party, organization, or association. We think that the words "held by any political party, organization or association," as they appear in the statute, are not used in a restrictive sense, but are employed epithetically,—not with the intention of limiting the scope of the salutary enactment, but with the purpose of extending it to every known form of political primary election; for every primary election is, according to the very definition of the word,—a definition not only recognized by popular usage and standard lexicographical authorities but also by a statute of this State (Penal Code, §448) which was in existence when the act now contained in the Political Code, §113, was adopted,—necessarily held by a party, or by an organization or association of some kind, for the purpose of making political nominations by ballot. If an election is so held, it is a primary election; if it is not so held, it is not a primary election. The expression "primary election," ex vi termini, carries with it all the meaning that the words "held by any political party, organization or association" denote. This being true, the designation of the political party or association by which the primary election was held, if it had been added to the words of the indictment, could have been useful only as words of description. If the primary election in question is described in the indictment with such reasonable certainty as to inform the defendants and the court as to what particular transaction is to be investigated, the description is legally adequate, although additional or different words of description might also have been used with propriety. The primary election is described as being the one held on a named day, at a named precinct, for the purpose of nominating candidates for certain designated offices; it also appears who the managers were, who was the officer that qualified them, and further that it was the primary at which S. A. Morris was a candidate for member of the General Assembly from DeKalb county. We think that these things clearly identify the transaction and sufficiently inform the court and the defendants as to what primary election was referred to by the indictment. Nor is it material that the party rules under which the primary election was to be held are not set forth. Party rules could only add to the provisions of §§113-115 of the Political Code, and could not dispense with the things therein required. To be more specific, the oath of the managers, prescribed by section 113, is required by

law, and is therefore a lawful oath within purview of the section of the criminal code on the subject of false swearing; and no party rule could dispense with the necessity for this oath; and since it is alleged that the defendants were the managers of the election, it will be presumed that they were regularly appointed under the rules, if any; especially since it is also alleged that they took the oath as managers and acted as such.

4. The objection raised by the sixth ground of the demurrer, that there is no such political division of this State as "Lithonia district," is not well taken. We infer that counsel intend thereby to raise the point that militia districts in this State are known by number, and not by name. Election precincts or districts are not necessarily coincident territory with militia districts, though outside of the cities they are usually so. However, we think this is immaterial; for, in our opinion, either a militia district or an election precinct may be designated in pleadings either by its number or by the name according to which it is generally known.

5. An inspection of the indictment shows that the deficiency set up in the 8th ground of the demurrer does not in fact exist.

In fine, the demurrer, though raising many nice questions of law, is not, in our opinion, well taken as to any of the grounds.

*Judgment affirmed.*