23224. ALLEN et al. v. MUSKETT.

ARGUED DECEMBER 14, 1965—DECIDED JANUARY 11, 1966.

*Jones, Bird & Howell, Earle B. May, Jr., Eugene T. Branch,*

*Henry L. Bowden, Ferrin Y. Mathews, James B. Pilcher, Thomas F. Choyce, Trammell Vickery,* for appellants.

*Charles E. Moore, Muskett & Moore, Charles E. Muskett,* for appellee.

ALMAND, Justice.  Charles E. Muskett, as an elector, voter and candidate for the office of Alderman of the City of Atlanta in a primary election, brought a petition on his own behalf and in behalf of all other candidates against Ivan Allen, Sam Massell and J. J. Little in their respective capacities as Mayor, Vice-Mayor and Clerk of the City of Atlanta and sixteen named individuals in their capacities as members of the Atlanta City Executive Committee.  As finally amended, the prayers were: (a) that the defendants be restrained and enjoined temporarily and permanently from conducting, holding and supervising the primary election for Aldermen for the City of Atlanta to be held on September 8, 1965, until and unless the plaintiff was permitted to qualify as a candidate without the payment of the entrance fee as set by the defendant members of the Atlanta City Executive Committee; (b) for a writ of mandamus against the chairman of the committee  to require him to register and qualify the plaintiff as a candidate for alderman without the payment of an entrance fee; (c) that the court enter a judgment or decree declaring the rights and duties of the parties; (d) that a declaration be made to the effect that the Atlanta City Executive Committee is without legal authority to conduct a primary election; (e) that the defendants pay the cost of the election, and (f) in the alternative, that the court declare the entrance fees as set by the executive committee unreasonable, and set a reasonable fee.

The petition alleged that (a) the qualifying fee constitutes a pecuniary qualification contrary to the due process clauses of the State Constitution and the 14th Amendment to the Federal Constitution, (b) the Act of the General Assembly (Ga. L. 1933, p. 227), under which the executive committee operates, does not authorize it to assess and require the payment of a fee to qualify as a candidate in the primary, and (c) the required fee of $1,300 to qualify in the race for alderman is excessive, arbitrary and unreasonable.

After a hearing by the court on the prayers of the plaintiff for an injunction, declaration of rights and for the writ of mandamus and upon consideration of the petition, the answers of the defendants, the evidence and stipulations of the parties, the court, on August 17, 1965, entered its order and judgment in which were made declarations and rulings, viz: (1) the members of the city executive committee are public officers of the City of Atlanta; (2) the primary is not a voluntary, permissive primary but is one established and governed by law—a mandatory election which the members of the committee are under a duty as public officers to hold and (3) Section 10 of the Act of 1933 (Ga. L. 1933, p. 227) "providing that the expense of holding such election shall be paid by the political party or other organization is not applicable, it being contrary to the rules of law that the expense of a public election held by governmental authority before the entire electorate as a part of the government machinery set up for city elections be paid by private persons or otherwise than by the government." The order and judgment also stated (4) "that not only can a non-partisan primary be held but that a non-partisan primary is required to be held," (5) "that the reasonable and necessary expenses of said election and necessary run-over election are a lawful charge upon the treasury of the City of Atlanta" and (6) "that said rule providing a six and nine-tenths percent fee calculated upon the official salaries for four years as above stated, and the schedule adopted pursuant thereto as to said officials, are unauthorized by any law, that the rule and schedule are unreasonable because they impinge upon the rights of the voters above referred to and upon the right of qualified persons to run for said public offices above referred to, and that they are ultra vires, and therefore, null and void."

The court in this order temporarily restrained the defendant members of the city executive committee "(a) from applying the aforesaid rules as to entrance fees so as to exclude from the aforesaid primary election, any run-over for which he may be otherwise eligible, plaintiff in this case, Honorable Charles E. Muskett, as a candidate for the office of Alderman, Position Number One, Fifth Ward; and, (b) from applying the aforesaid

rules as to entrance fees and the aforesaid schedule of fees so as to exclude from said primary election, or on that account from any run-over for which such person may be eligible, any candidate for the office of Mayor, President of the Board of Aldermen, member of the Board of Aldermen, member of the Board of Education, who shall apart from the aforesaid rules as to entrance fees and schedule of fees be qualified to become a candidate for any of said offices and who shall apply to said Committee to become such candidate on or before twelve o'clock meridian, Friday, August 20, 1965." Subsequently, the City of Atlanta, with its consent, was made a party defendant. On August 24, 1965, the court ordered the City of Atlanta to bear the expenses of the primary election in such amount necessary for its holding for the amount in excess of funds presently in the hands of the committee.

The members of the Atlanta City Executive Committee and the City of Atlanta filed their notices of appeal. The City of Atlanta asserts that the court erred in: (a) holding that the members of the executive committee are public officers, (b) that the primary election is a governmental function and, (c) in ordering the city to pay the expenses of the primary. The members of the executive committee assert that the court erred in failing to apply the plain, unambiguous and positive language of the Act of 1933 (Ga. L. 1933, p. 227) and in holding the entrance fee requirement unnecessary as a matter of law.

■ In our opinion, the determination of the errors assigned is dependent upon the correctness of the court's ruling that the members of the Atlanta City Executive Committee are public officers of the City of Atlanta and in holding a primary election, they are acting as a governmental authority. It is conceded by all parties that the primary election which had been set for September 8, 1965, by the defendant members of the Atlanta City Executive Committee for the nomination of candidates for Mayor, Vice-Mayor and the Board of Aldermen by the committee to be voted on in the General Election in December, was being held solely by virtue of the Act of 1933 (Ga. L. 1933, p. 227). There is no contention that there is any provision in the charter of the City of Atlanta or any general law that requires

the city to hold a primary prior to its general election or requires any candidate for public office in Atlanta in the general election to have previously been nominated by any political party, organization or association. So the answer to the main question is to be found in the provisions of the 1933 Act as amended.

This Act (Ga. L. 1933, p. 227) in its caption provides: "An Act to regulate primary elections in all municipalities in the State of Georgia, by providing how such elections shall be conducted, the returns thereof made, and to provide penalties for the violation thereof, and providing that the same shall apply only to cities of 200,000 or more according to the last or any future Federal Census; and for other purposes." Section 1 provides: "Be it enacted by the General Assembly, and it is hereby enacted by authority of the same, that every municipal political primary election held by any political party, organization, or association, or held for the purpose of determining any question that may be submitted thereat, shall be presided over and conducted in the manner and form prescribed by the rules of the political party, organization, or association holding such primary election by managers selected in the manner prescribed by such rules; such managers shall, before entering upon the discharge of their duties, each take and subscribe an oath that he 'will fairly, impartially, and honestly conduct the same according to the provisions of law providing how primary elections shall be held in the municipalities of the State of Georgia, and in accordance with the laws of this State governing regular elections for officers of this State.' Should one or more of the managers thus appointed to hold such elections fail to appear on the day of election, the remaining manager or managers shall appoint others in their stead, and administer to them the oath herein prescribed. The managers shall take the oath before a notary public or other officer authorized to administer oaths; but if no such officer can be conveniently had, the managers may administer the oath to each other. The oath, after being made and subscribed, shall be filed in the office of the clerk of the municipality, or other office performing the ordinary duties of a clerk thereof, within five days after an election." Section

8 provides: "The party authorities shall, in all matters not provided for herein, formulate rules and regulations for holding said primary election and for making returns thereof to the proper party authorities." Section 10 provides: "The expense of holding such primary elections shall be paid by the political party or other organization holding the same; and such organization, through its head officer shall within thirty days from the date of any such primary, file with the clerk of the municipality an itemized statement, under oath, of all receipts and disbursements in connection with the holding of any such primary." It is conceded that the Atlanta City Executive Committee is not a political party, but it is contended by the appellants that it is an "organization or association" for holding a primary within the terms of the statute. "Primary elections shall be construed to mean elections by ballot for the nomination of a candidate or candidates for office, as opposed to nominations by conventions, to run at subsequent elections to be held under the laws of this State, for State, county or municipal offices." *Code* § 58-610. A primary election has been defined in *Norton v. State*, 5 Ga. App. 586, 595 (63 SE 662) as follows: "We think that the words 'held by any political party, organization or association' as they appear in the statute, are not used in a restrictive sense, but are employed epithetically,—not with the intention of limiting the scope of the salutary enactment, but with the purpose of extending it to every known form of political primary election; for every primary election is, according to the very definition of the word . . . necessarily held by a party, or by an organization or association of some kind, for the purpose of making political nominations by ballot." We find nothing in the Act of 1933 that requires any political party, organization or association to hold a nominating primary prior to the general election of city officers. There is nothing in the record to show that the City of Atlanta in its official capacity, by charter or general law, has any authority to control, regulate or supervise the holding of a primary election under the Act of 1933. In 18 Am. Jur. 271, Elections, § 139, is found the following statement: "It is generally agreed that party committeemen do not become public officers by reason of the fact that they are

elected at a statutory primary election, because the duties of a public office are in their nature public; that is, they involve in their performance the exercise of some portion of the sovereign power, whether great or small, in the performance of which all citizens, irrespective of party, are interested, either as members of the entire body politic or of some duly established division of it. Manifestly, membership in a political committee belonging to one party or another does not come within the above description of what constitutes public office, and the fact that the legislature undertakes by statute to regulate the election and conduct of political committees does not make the office a public one. The members thereof continue to be, as before, officers of the party which elects them, and their duties are confined to matters pertaining to the party to which they belong and which alone is interested in their proper performance." This conclusion is overwhelmingly supported by the cited authorities. The Atlanta City Executive Committee is not under the control of the Mayor and the Board of Aldermen. They take no oath of office as required of charter officers, nor do they exercise any of the sovereign power of government.

The court erred in holding that the members of the Atlanta City Executive Committee are public officials of the City of Atlanta in the holding of the primary for the nomination of public officials to be elected in the general election of December and that they were exercising municipal governmental functions.

■ Sections 8 and 10 of the 1933 Act authorize the City Executive Committee to formulate rules and regulations for holding the primary election and the expense of holding such election shall be paid by the "political party or other organization" holding the election. The legislature made no attempt to lay down any rules or factors governing qualifications of candidates in the primary to be held, nor did they fix any regulation as to entrance fees. These matters were left entirely to the political party or organization holding the primary.

"Elections belong to the political branch of the government, and courts of equity will not interfere to protect a *purely* political right." *Printup v. Adkins*, 150 Ga. 347 (1) (103 SE 843). "Since a political organization is an unincorporated voluntary

association in which no rights of property or personal liberty are involved, a court of equity ordinarily has no jurisdiction, in the absence of statutory authority, to interfere by injunction to control actions of such organization or those of its officers and committees." 29 CJS 219, Elections § 88. Primary laws do not bind a political party or organization holding a primary beyond the express provisions of such laws. People ex rel. Lindstrand v. Emmerson, 333 Ill. 606 (165 NE 217, 62 ALR 912). It may also be noted here that running in and receiving the nomination in a primary election is not the equivalent to being elected. *Cox v. Peters*, 208 Ga. 498 (67 SE2d 579). For the appellee to be a candidate for the position of alderman in the December general election, it was not necessary that he run in the primary election. If he desired to participate in the non-governmental primary, he would have to submit to its rules and regulations, and where they are not contrary to any express laws regulating such primary elections, a court of equity will not interfere.

■ We now deal with the court's order directing the City of Atlanta to pay the expenses in holding the primary. In *Miller v. City of Cornelia*, 188 Ga. 674 (4 SE2d 568), it was held: "A municipal corporation is without authority, not only to contract or incur a liability, but to donate its money or property, unless authorized by its charter or some general law of the State. Such a power is not conferred by a general-welfare provision in the charter." Id., p. 676. The general rule is that a primary election to select candidates of political parties or organizations for public office is not a public purpose for which public funds may be appropriated. Waples v. Marrast, 108 Tex. 5 (184 SW 180, LRA 1917A 253) contains the statement of the rule which is applicable here: "To provide nominees of political parties for the people to vote upon in the general elections is not the business of the state. It is not the business of the state because, in the conduct of the government, the state knows no parties and can know none. If it is not the business of the state to see that such nominations are made, as it clearly is not, the public revenues cannot be employed in that connection. To furnish their nominees as claimants for the popular favor in

the general elections is a matter which concerns alone those parties that desire to make such nominations. It is alone their concern because they alone are interested in the success of their nominees. The state, as a government, cannot afford to concern itself in the success of the nominees of any political party, or in the elective offices of the people being filled only by those who are the nominees of some political party. Political parties are political instrumentalities. They are in no sense governmental instrumentalities. The responsible duties of the state to all the people are to be performed and its high objects effected without reference to parties, and they have no part or place in the exercise by the state of its great province in governing the people." Id., p. 258. The court erred in its ruling that the holding of the primary was a governmental function and ordering the City of Atlanta to bear the expense necessary for holding the primary.

The court having erred in its declaration as to the nature and status of the Executive Committee of the City of Atlanta under the Act of 1933 and the duties of the City of Atlanta under its charter, it follows that all orders based upon such declarations and orders were erroneous and are vacated.

*Judgment reversed. All the Justices concur.*