A09A0786. AIRPORT AUTHORITY OF THE CITY OF ST. MARYS, GEORGIA v. CITY OF ST. MARYS et al.

(678 SE2d 103)

MIKELL, Judge.

After an evidentiary hearing, the trial court dismissed this declaratory judgment action filed by the Airport Authority of the City of St. Marys (the "Authority") against the City of St. Marys (the "City"), finding that the City had not violated any right delegated to the Authority by law or contract when it excluded the Authority from discussions concerning relocation of the St. Marys Airport. The Authority appeals. We affirm for the reasons set forth below.

Currently, the City owns the land upon which the St. Marys Airport is located, and the Authority leases the property from the City. The term of the lease is five years; it was executed on May 24, 2004, and expires on May 23, 2009. The City retains the right to terminate the lease "at any time" upon 90 days' written notice. The lease states that the Authority agrees "to promptly observe, comply with, and execute . . . all present and future laws, rules requirements, orders, directions, ordinances and regulations of . . . any and all governmental authorities or agencies," including the City. The lease also states that the Authority "assumes all duties and obligations with relation to the premises and buildings . . . and also the maintenance and operation thereof, and also the use and manner thereof, as if Lessee be also owner and Lessor."

The Authority's enabling legislation, the St. Marys Airport Authority Act,[1] declares that its "general purpose" is to build, maintain, improve, and operate the airport, to acquire the property for the airport, "and to do any and all things deemed by the Authority necessary, convenient or desirable for and incident to the efficient and proper development and operation of such types of undertakings."[2] The legislation provides that the City's mayor and council shall appoint the members of the Authority.[3]

In 2003, before the lease was executed, the City passed a resolution supporting its congressman in his quest to obtain funds and political support for the relocation of the airport. On April 14,

[1] Ga. L. 1964, Vol. II, pp. 2438-2453.

[2] Ga. L. 1964, Vol. II, § 27, pp. 2451-2452.

[3] Ga. L. 1964, Vol. II, § 3, p. 2439.

2008, the City passed another resolution concerning the relocation of the airport, authorizing various City officials to pursue it "diligently . . . as recommended by the City's consulting firm . . . and as approved by the Federal Aviation [Administration] [("FAA")] . . . provided the City shall retain full ownership and control of the property upon which the airport is currently located."

Shortly after the City passed the second resolution, the Authority filed a complaint for declaratory relief against the City, its mayor, and the members of the City council, contending that the Authority had the duty to manage the affairs of the airport and that the City was attempting to undermine the Authority and exclude it from the issue of relocation of the airport. The Authority further asserted that the City was interfering with the Authority's ability to obtain funds from the FAA to make improvements to the airport. The complaint prayed for a judgment "declaring the rights of the Authority to conduct the business of the airport."

A hearing was held on the complaint, and the sole witness was Richard Russell, the Authority's chairman. He testified that, until the issue of relocation arose, the Authority had sole responsibility for the airport; that the Authority has funds which should be applied toward airport improvements; that the City "has gone directly to the FAA and left the . . . Authority pretty much out of the loop"; and that the Authority ought to have a voice in any business that concerns the airport, including meetings concerning the future of the airport. Upon questioning by the court as to the relief the Authority sought, Russell testified that when issues such as the relocation come before the City, the City should refer them to the Authority to make the decision.

After the hearing, the trial court entered an order ruling, in relevant part, that neither the lease nor the Authority's enabling legislation requires the City to cooperate with the Authority in applying for federal funds. The court also ruled that the City had the right not to renew the lease in 2009. Considering this fact, the City might deem the expenditure of public funds for airport improvements wasteful and could refrain from sponsoring requests for federal funds on that basis. Finally, the court ruled that the City had the right to relocate the airport against the Authority's wishes, so that the City did not violate the Authority's rights by failing to include the Authority in discussions concerning possible alternative sites for the airport. In any event, the court ruled, whether or not it was in the public interest to involve the Authority in such discussions was a purely political question.[4] Finding no evidence showing

---

[4] See, e.g., *Altman v. Cooper*, 212 Ga. 627, 628 (1) (94 SE2d 685) (1956).

that the City had violated any right possessed by the Authority, the court dismissed the action.

On appeal, the Authority contends that it is entitled to a declaratory judgment to establish its right to conduct the business of the airport, and that the trial court erred in refusing to issue such a judgment. The Authority argues that, by executing the lease, the City relinquished to the Authority the power to operate the airport, and that the evidence at the hearing established that the City was interfering with the Authority's right to do so.

On appellate review following a nonjury trial, we will not disturb the trial court's factual findings if there is any evidence to sustain them.[5] However, we review the trial court's conclusions of law de novo.[6]

At the outset, we note that the trial court incorrectly applied the rule regarding political questions. The rule is as follows: "Elections belong to the political branch of the government, and courts of equity will not interfere to protect a *purely* political right."[7] The rule has no application where, as here, the parties' relationship is governed by a lease. Nevertheless, because the trial court correctly ruled that the Authority was not entitled to declaratory relief, its judgment will be affirmed.[8]

"The Declaratory Judgment Act provides a means by which a superior court simply declares the rights of the parties or expresses its opinion on a question of law, without ordering anything to be done."[9] The purpose of the Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."[10] The Act gives the superior courts the power to declare the rights of interested parties in cases of "actual controversy"[11] or "justiciable controversy."[12]

> A declaratory judgment is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty

---

[5] *Delbello v. Bilyeu*, 274 Ga. 776, 777 (1) (560 SE2d 3) (2002).

[6] *Burnette v. Caplan*, 287 Ga. App. 142, 143 (650 SE2d 798) (2007).

[7] (Citation and punctuation omitted; emphasis in original.) *Allen v. Muskett*, 221 Ga. 665, 671 (2) (146 SE2d 782) (1966); *Altman*, supra; *Printup v. Adkins*, 150 Ga. 347 (103 SE 843) (1920).

[8] *Crawford v. Dammann*, 277 Ga. App. 442, 447 (1) (b) (626 SE2d 632) (2006) (a judgment right for any reason will be affirmed).

[9] (Citation and punctuation omitted.) *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999).

[10] OCGA § 9-4-1.

[11] OCGA § 9-4-2 (a).

[12] (Citation and punctuation omitted.) *Baker*, supra at 213-214 (1).

and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.[13]

Where the petitioner does not show that it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court risks issuing an unauthorized advisory opinion.[14] Moreover, to establish a justiciable controversy, there must be "a concrete issue[,] . . . a definite assertion of legal rights, and a positive legal duty with respect thereto, which are denied by the adverse party."[15]

Guided by these principles, we conclude that the Authority has not demonstrated that it faces "uncertainty and insecurity" with regard to the propriety of taking any future action pursuant to the rights delegated to it by law or lease. The Authority has voiced frustration over the City's assertion of its right to pursue relocation of the airport without input from the Authority, and it complains that the City has interfered with its desire to obtain federal funds for improvements to the airport. But although the lease delegates to the Authority "all duties and obligations with relation to the premises and buildings," it does not delegate all matters within the public interest. Instead, the lease obligates the Authority to heed the City's directives, and the City's resolution to pursue relocation of the airport is such a directive. In addition, the Authority's evidence that it has been left "out of the loop" does not demonstrate a "concrete issue" for the purpose of setting forth a "justiciable controversy."[16] The superior court did not err in determining that the City did not violate any right held by the Authority and in dismissing the action.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 29, 2009.

*James E. Stein*, for appellant.
*Amanda B. Blackledge*, for appellees.

---

[13] (Citation and punctuation omitted.) Id. at 214 (1).
[14] Id.
[15] (Punctuation omitted.) *Higdon v. City of Senoia*, 273 Ga. 83, 85 (1) (538 SE2d 39) (2000), citing *City of Nashville v. Snow*, 204 Ga. 371, 377-378 (1) (a) (49 SE2d 808) (1948).
[16] See *Higdon*, supra.