S95A0072. INTERNATIONAL BUSINESS MACHINES
CORPORATION v. EVANS et al.
(453 SE2d 706)

FLETCHER, Justice.

International Business Machines sued the Georgia Department of Administrative Services (DOAS), and David Evans, in his official capacity as commissioner of DOAS, seeking to enjoin DOAS's award of a state contract for a computer system to Hitachi Data Systems or, in the alternative, to have DOAS re-bid the contract. The trial court dismissed IBM's complaint on the ground that sovereign immunity barred the action. We reverse and remand.

DOAS issued a Request For Proposal (RFP) pursuant to OCGA § 50-5-67 (a) for the procurement of a mainframe computer. According to the terms of the RFP, the contract award would be made to the "responsible offeror(s) whose proposal(s) is determined in writing to be the most advantageous to the State, taking into account all of the evaluation factors set forth in this RFP. No other factors or criteria shall be used in the evaluation." The RFP detailed the evaluation criteria and provided a range of points to be given to a proposal if it met specified requirements. A team of technical experts from DOAS would evaluate each proposal and award points based on that evaluation. The DOAS technical team awarded Hitachi's proposal the most points and DOAS awarded the contract to Hitachi based on the recommendation of the technical team. IBM's primary complaint is that the technical team did not award IBM a certain number of points that IBM alleges the RFP issuing officer orally told IBM it would

---

receive and that the failure to award these points violated the terms of the RFP. IBM contends that if the points had been awarded in accordance with the oral representation of the issuing officer, IBM would have received the highest number of points and should have been awarded the contract.[1]

1. DOAS and the commissioner both contend that sovereign immunity protects them from injunctive relief. We disagree. This court has long recognized an exception to sovereign immunity where a party seeks injunctive relief against the state or a public official acting outside the scope of lawful authority. See *Chilivis v. Nat. Distrib. Co.,* 239 Ga. 651, 654 (238 SE2d 431) (1977) (citing cases); *Irwin v. Crawford,* 210 Ga. 222, 224 (78 SE2d 609) (1953) ("if the actions of [public corporations, boards or commissions] are illegal or contrary to law, the courts will intervene in order to prevent [an action] illegal or contrary to law").

To avoid the harsh results sovereign immunity would impose, the court has often employed the legal fiction that such a suit is not a suit against the state, but against an errant official, even though the purpose of the suit is to control state action through state employees. See *Undercofler v. Seaboard Air Line R. Co.,* 222 Ga. 822, 827 (152 SE2d 878) (1966) (suit seeking to enjoin assessment of property taxes was not suit against the state because complaint alleged tax commissioner was acting contrary to state and federal constitutions). In other instances, the court has scrutinized the challenged act and if the act is legal, found sovereign immunity applies; on the other hand, if the act is illegal, then the court has held that sovereign immunity is no bar. See *Evans v. Just Open Government,* 242 Ga. 834, 843-844 (251 SE2d 546) (1979) (Hill, J., concurring specially) (noting that holding that sovereign immunity barred suit was dicta because it depended upon analysis that officials had not violated any laws); *Cannon v. Montgomery,* 184 Ga. 588, 591-592 (192 SE 206) (1937). The underlying, though often unstated, premise in these cases is that the executive branch of government cannot cloak itself in the mantle of sovereign immunity when an injured party seeks to enjoin an illegal action. However, the use of such legal fictions and circular reasoning has contributed greatly to the confusion that exists regarding the proper application of sovereign immunity. Recognizing a suit for injunctive relief to restrain an illegal act as an exception to sovereign immunity will permit a more logical analysis.[2]

---

[1] We need not reach whether the issuing officer had the authority to change the terms of the RFP or whether IBM was entitled to rely upon his representations. But see *State of Ga. v. U. S. Oil Co.,* 194 Ga. App. 1, 2 (389 SE2d 498) (1989).

[2] Immunity under Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d) is not an issue in this case, as the dissent suggests, because that provision deals with official immunity, rather than

2. The 1991 amendment to the State Constitution does not negate this long-standing principle of law. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX. Rather, the 1991 amendment changed the way in which the state *waived* its immunity, by removing the insurance waiver that existed under the prior law. See *Curtis v. Bd. of Regents*, 262 Ga. 226, 228 (416 SE2d 510) (1992) (intent of 1991 amendment is to "redraw and redefine the terms of the state's waiver of sovereign immunity"); *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 50 (414 SE2d 638) (1992) (discussing background of 1991 amendment). The 1991 amendment is not implicated in this case because sovereign immunity has *never* applied to bar this type of action seeking injunctive relief. See also *City of Thomasville v. Shank*, 263 Ga. 624, 625 (437 SE2d 306) (1993) (long standing exception to sovereign immunity that a municipality may be held liable for creating a nuisance was not abrogated by 1991 constitutional amendment). Therefore, sovereign immunity does not stand as a bar to IBM's complaint, and injunctive relief may be granted if DOAS acted without lawful authority and beyond the scope of its official power in the manner in which it evaluated IBM's proposal.[3]

3. The burden on the party seeking to challenge a decision of the state or one of its officials is a heavy one. A court may not substitute its judgment for that of the state or its employees. Rather, a court may interfere with an exercise of the state's statutory and regulatory authority only where the state has acted wholly outside its authority; has acted arbitrarily and capriciously in its decision-making; has rendered a decision that is clearly erroneous; or has acted in violation of constitutional rights. See *Bentley v. Chastain*, 242 Ga. 348, 352 (249 SE2d 38) (1978); see also OCGA § 50-13-19 (h) (applying similar standard for judicial review under the Administrative Procedures Act).

In this case, the terms of the RFP provide the limits of the authority of DOAS to award the contract. See *Amdahl Corp. v. Dept. of Admin. Svcs.*, 260 Ga. 690, 696 (398 SE2d 540) (1990) (DOAS and its

---

sovereign immunity. See *Gilbert v. Richardson*, 264 Ga. 744, 752 (452 SE2d 476) (1994). Official immunity is not implicated in this case because IBM has not sought to hold the DOAS commissioner personally liable, but rather seeks to control the commissioner's actions in performing his official duties. Official immunity comes into play only when a suit is brought against a public official in his personal capacity. *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 56 (414 SE2d 638) (1992) (Hunt, J., concurring) ("suits against public employees in their personal capacities involve official immunity"); see also *Gilbert*, 264 Ga. at 750 (basis for official immunity is to "preserve independence of action without deterrence or intimidation by the fear of *personal liability* and vexatious suits") (emphasis supplied) quoting Restatement (Second) of Torts, § 895D, comment b.

[3] Because sovereign immunity does not bar IBM's complaint, it is unnecessary to decide whether sovereign immunity would bar a suit based on the alleged violation of a constitutional right.

commissioner are bound by the terms of the RFP). The trial court did not address IBM's allegation that DOAS violated the terms of the RFP in its evaluation of IBM's proposal. Therefore, we remand the case to allow the trial court to consider, in light of this opinion, IBM's arguments that the alleged violation of the RFP entitles IBM to injunctive relief.

*Judgment reversed and case remanded. All the Justices concur, except Benham, P. J., and Hunstein, J., who concur in part and dissent in part.*

HUNT, Chief Justice, concurring.

While I fully concur with the majority, I write to say that simple common sense tells us that the doctrine of sovereign immunity should not be applied in this case. The primary purpose of the doctrine of sovereign immunity is the protection of the public purse. Protection of the public purse is also a primary objective of competitive bidding statutes. Should IBM be successful in compelling the State to accept a bid which will cost the taxpayers of Georgia less, rather than more, it will be advancing the same purpose which the doctrine is intended to advance. This is not a case in which a party is attempting to enrich itself at the public's expense; on the contrary, this attempt to have the State follow its own competitive bidding statute will, if successful, result in that which is advantageous to the State.[4] In a very real and practical way, it may be said that IBM's suit is as much on behalf of the State as against it, just as a shareholder's action against the officers of a corporation is a suit on behalf of the corporation. Were the State successful in defending on the doctrine of sovereign immunity, the taxpayers of the State, whom the doctrine is supposed to protect, would be the losers.

BENHAM, Presiding Justice, concurring in part and dissenting in part.

The majority sets forth that neither DOAS nor its commissioner can rely on the doctrine of sovereign immunity as a shield from IBM's suit seeking injunctive relief. I do not believe that DOAS and its commissioner are so inextricably entwined that they can be painted with the same broad stroke. Instead, I am of the opinion that the 1990 constitutional amendment (1983 Ga. Const., Art. I, Sec. II, Par. IX) places DOAS, as a department of the state, within the folds of the cloak of sovereign immunity, and the question of the commissioner's immunity from suit is determinable only after further fact-finding by

---

[4] Doubtless, it would be in IBM's financial interest to prevail, but that does not mean there would be no public benefit. Here, IBM's self-interest can be seen as consistent, as opposed to inconsistent, with the public interest.

the trial court. In addition, I do not join the majority's implicit holding that subparagraph (d) of the constitutional amendment is not applicable to the case at bar. By so holding, the majority does not include suits for injunction within the term "suit" as it is used in the constitutional subsection (d), which states that officers and employees of the state or its agencies *shall not be subject to suit* or liability absent special circumstances. Compare *Dept. of Human Resources v. Briarcliff Haven*, 141 Ga. App. 448, 450 (233 SE2d 844) (1977). (" 'The word "suit" is all-inclusive and applicable to any type of action.' ") Thus, I would affirm the trial court's decision that sovereign immunity immunizes DOAS from this suit and, while I endorse the remand of this case to the trial court, I believe the remand should include further fact-finding to determine if the commissioner is entitled to the protection from suit the constitutional amendment affords.

The majority inexplicably limits the constitutional amendment to a change in the way the state waived its immunity. It is true that the second sentence of subparagraph (e) "effects a major constitutional retreat from 1983, . . . return[ing] the power of immunity waiver exclusively to the General Assembly." R. Perry Sentell, Jr., Local Government Tort Liability: The Summer of '92, 9 Ga. State. Univ. Law Rev. 405, 407 (1993). However, the amended version of the constitutional provision on sovereign immunity contains more than the second sentence of subparagraph (e) and does much more than change the way of waiver. The first sentence of subparagraph (e) reiterates the long-standing principle that sovereign immunity extends to the state and its departments and agencies, with a few constitutionally-specified exceptions. In addition, just as the 1974 constitutional amendment gave constitutional status to the doctrine of sovereign immunity, the most recent constitutional amendment has bestowed constitutional status to the case law insulating state officers and employees from suits based on the negligent exercise of their authorized discretion.

Subparagraph (e) of the constitutional provision states:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

The provision is very sweeping — a state department has sovereign immunity unless it has been waived by the other subparagraphs of the constitutional provision or by an act of the General Assembly. The other constitutional provisions referenced in the subsection waive

sovereign immunity as to any action ex contractu for breach of a written contract (Art. I, Sec. II, Par. IX (c)), and authorize the General Assembly to waive sovereign immunity by enacting a State Tort Claims Act (Art. I, Sec. II, Par. IX (a)). Neither is applicable in this case, and the General Assembly has not passed an applicable statutory waiver.[5] Under the clear language of subsection (e), DOAS is entitled to dismissal of the action against it on the ground that sovereign immunity bars such a claim against a department of the state. The majority fails to acknowledge the existence of the constitutionally-guaranteed protection sovereign immunity affords a department of the state.

The majority, treating DOAS and its commissioner as one entity, holds that the department/commissioner is not entitled to sovereign immunity coverage because sovereign immunity is "not applicable" where a party seeks injunctive relief against the state or a public official acting outside the scope of lawful authority. It is a long-standing principle of Georgia law that sovereign immunity is not applicable where an injunction is sought to prevent the commission of an alleged wrongful act by an *officer* of the state acting under color of office but without lawful authority and beyond the scope of official power because such a suit is not against the state, but against an individual stripped of his official character. *Chilivis v. Nat. Distrib. Co.*, 239 Ga. 651 (1) (238 SE2d 431) (1977); *Musgrove v. Ga. R. &c. Co.*, 204 Ga. 139, 157 (49 SE2d 26) (1948). Where an officer acts contrary to and derogatory of the express purpose and intent of the state, his acts are illegal and unauthorized and a suit for injunctive relief against him is not an action against the state. *Cannon v. Montgomery*, 184 Ga. 588, 592 (192 SE 206) (1937). Injunctive relief against an *officer* of the State may be had when the official action taken "was wholly without lawful authority and beyond the scope of his official power." *Dennison Mfg. Co. v. Wright*, 156 Ga. 789 (1) (120 SE 120) (1923). See also *Moore v. Robinson*, 206 Ga. 27 (2) (55 SE2d 711) (1949); *Patten v. Miller*, 190 Ga. 105 (6) (8 SE2d 776) (1940). I would maintain the separation between department and personnel that our case law has developed and hold that *the commissioner* does not enjoy sovereign immunity from a suit seeking injunctive relief *if* it is established that the commissioner acted without lawful authority and beyond the scope of his official power. Since the record as it currently stands does not contain a finding by the trial court on this crucial issue, I would

---

[5] OCGA § 33-24-51 (b) expressly waives sovereign immunity upon the purchase of motor vehicle liability insurance; § 50-21-1 (a) waives sovereign immunity as to any action ex contractu; and § 50-21-23 (a) waives sovereign immunity as to the tort of state officers and employees acting within scope of their official duties. See, e.g., *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994).

remand the case for development of the record.

Should, on remand, the trial court determine that the commissioner acted with lawful authority and within the scope of his official power, the trial court would then be required to determine whether the commissioner was entitled to the immunity provided by subparagraph (d) of the sovereign immunity constitutional amendment. Subparagraph (d) states:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Thus, except as provided in the State Tort Claims Act, an officer or employee of the state is not subject to suit for the performance or nonperformance of his official functions unless he acted with malice or with actual intent to cause injury in the performance of his official functions, or was negligent in his performance or failure to perform a ministerial function. In other words,

> "a public official who fails to perform purely ministerial duties required by law is subject to [suit] by one who is injured by his omission. However, . . . 'where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and *without wilfulness, malice, or corruption*.'" These discretionary acts "lie midway between judicial and ministerial ones. The name of the public officer or officers is immaterial, and the question depends on the character of the act. If the act done . . . is judicial or quasi-judicial, . . . the officer acting is exempt from liability."

*Hennessy v. Webb*, 245 Ga. 329, 330-331 (264 SE2d 878) (1980). See also *State Bd. of Ed. v. Drury*, 263 Ga. 429, 436 (437 SE2d 290) (1993). A ministerial act is

> "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." [Cit.]

*Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990).

> Where "a matter is left to the discretion of . . . [a decision-maker], it would be absurd to say that any other tribunal is to inquire into the grounds and reasons on which they have decided, and whether they have exercised their discretion properly or not." [Cits.]

*Peeples v. Byrd*, 98 Ga. 688, 693 (25 SE 677) (1896). In order to ascertain whether subparagraph (d) of the sovereign immunity paragraph protects the commissioner from suit, I submit that the trial court must make a determination whether the commissioner's act was ministerial or discretionary.

Instead of summarily concluding that sovereign immunity is not implicated in suits seeking injunctive relief against a department or agency of state government and the officials and employees thereof, I believe that DOAS, a department of the State of Georgia, is entitled to use sovereign immunity to shield itself from this suit, and that the officials and employees of the department may similarly be protected from suit should the appropriate facts be established. As a result, I cannot wholeheartedly join the majority opinion.

I am authorized to state that Justice Hunstein joins in this opinion.

DECIDED FEBRUARY 20, 1995 —
RECONSIDERATION DENIED MARCH 20, 1995.

*Long, Aldridge & Norman, Albert G. Norman, Jr., Harold N. Hill, Jr., Gordon D. Giffin, David L. Balser,* for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Assistant Attorney General, Troutman Sanders, Mark S. Vanderbroek, Eric A. Szweda,* for appellees.

*Sutherland, Asbill & Brennan, Charles T. Lester, Jr., Richard L. Robbins,* amicus curiae.