**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 13, 2012**

# In the Court of Appeals of Georgia

A12A1059. CENTER FOR A SUSTAINABLE COAST, INC., et al.
v. GEORGIA DEPARTMENT OF NATURAL RESOURCES.

ELLINGTON, Chief Judge.

The Center for a Sustainable Coast, Inc., and two named plaintiffs (collectively, "the Center") filed a petition for injunctive relief and declaratory judgment challenging the Georgia Department of Natural Resources' ("DNR") use of "letters of permission" to allow alterations to the coast that the Center contends require a permit.[1] The trial court dismissed the petition, and the Center appeals this ruling.

On appeal, this Court reviews the denial of a motion to dismiss de novo. *Scott v. Scott*, 311 Ga. App. 726 (1) (716 SE2d 809) (2011). In deciding the motion, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor. Id. So viewed, the relevant facts show that the Center

---

[1] The appellees moved for permission to file a supplemental brief, which was attached to the motion. The motion is hereby granted.

filed suit against several defendants, including DNR and the Coastal Resources Division ("CRD"), which is a division of the DNR. The complaint alleged that the CRD was violating the Shore Protection Act ("the Act") by issuing letters of permission for construction activities that, under the Act, require a permit. OCGA § 12-5-230 et seq. Pursuant to OCGA § 12-5-237,

> (a) No person shall construct or erect any structure or construct, erect, conduct, or engage in any shoreline engineering activity or engage in any land alteration which alters the natural topography or vegetation of any area within the jurisdiction of this part, except in accordance with the terms and conditions of a permit therefor issued in accordance with this part. A permit may authorize the construction or maintenance of the project proposed in an application. After construction of a project pursuant to a permit, the project may be maintained without a permit so long as it does not further alter the natural topography or vegetation of the site or increase the size or scope of the project.

> (b) No permit shall be required for a structure, shoreline engineering activity, or land alteration which exists as of July 1, 1979, provided that a permit must be obtained for any modification which will have a greater adverse effect on the sand-sharing system or for any addition to or extension of such shoreline engineering activity, structure, or land alteration; provided, further, that, if any structure, shoreline engineering activity, or land alteration is more than 80 percent destroyed by wind, water, or erosion as determined by an appraisal of the fair market value

2

by a real estate appraiser certified pursuant to Chapter 39A of Title 43, a permit is required for reconstruction.

In order to obtain a permit, an applicant must comply with myriad requirements, which includes providing the names and addresses of all landowners whose property adjoins or abuts the parcel of land. See, e.g., OCGA § 12-5-238. The permit is then submitted to a Shore Protection Committee, which is comprised of the Commissioner of the DNR and four others.[2] OCGA § 12-5-235 (a) & (b). The interested parties and adjoining landowners are provided notice of the proposed action before any permit is granted. See OCGA § 12-5-239 (b). In determining whether to grant the permit, the granting authority must consider whether the proposed action is unreasonably harmful; whether completion of the project will unreasonably interfere with conservation of marine life or wildlife; and whether completion of the project will unreasonably interfere with public access and enjoyment of public properties. OCGA § 12-5-239 (i).

---

[2] Local governments that have enacted ordinances meeting or exceeding the standards of the Act may also be certified to issue permits. See OCGA § 12-5-241 (a).

3

Although the Act does not contain any provision for circumventing the permit process,[3] the CRD often issues letters of permission for certain requests without requiring the applicant to formally seek a permit. Such letters of permission have allowed petitioners to take actions ranging from the rebuilding of houses and drainage systems, to the construction of a film set. The Center sought injunctive relief and declaratory judgment stating that the issuance of letters of permission were ultra vires acts. The Center also asserted claims for equal protection violations, due process violations, and attorney fees.

DNR and CRD (collectively, "the Respondents") moved to dismiss the complaint. According to the Respondents, the crux of the Center's claim was its request for a declaratory judgment and that all other counts in the complaint flowed from the contention that the issuance of letters of permission were ultra vires acts.[4] The Respondents maintained that declaratory judgment was unavailable as no justiciable controversy existed. Because the remaining counts flowed from the

---

[3] Compare OCGA § 12-5-283 (d) (granting commissioner authority to permit minor alterations to marshlands under Coastal Marshlands Protection Act).

[4] OCGA § 50-13-10, which governs declaratory judgment actions, provides a limited waiver of immunity for such actions. See, e.g., *Southern LNG v. MacGinnitie*, 290 Ga. 204, 206-207 (1) (719 SE2d 473) (2011).

4

declaratory judgment, the Respondents argued those counts should be dismissed as well. The trial court agreed with these arguments and granted the Respondents motion to dismiss.

The Center seeks to appeal this ruling. Although the Center raises several arguments in its brief, the two main issues are: (1) whether the trial court properly dismissed the declaratory judgment claim; and (2) whether dismissal of the declaratory judgment claim required dismissal of the remaining claims and the request for injunctive relief.

1. Under OCGA § 9-4-2, a trial court is authorized to declare rights and other legal relations of interested parties in any civil matter "in which it appears to the court that the ends of justice require that the declaration should be made; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such." OCGA § 9-4-2 (b).

> However, a declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated. As many times pointed out by this court, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light before he steps rather than after he has stepped in a hole.

5

(Punctuation omitted.) *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 594 (5) (631 SE2d 792) (2006). To constitute a justiciable controversy, "there must be a concrete issue, a definite assertion of legal rights, and a positive legal duty with respect thereto, which are denied by the adverse party." (Punctuation omitted.) *Airport Auth. of City of St. Marys v. City of St. Marys*, 297 Ga. App. 645, 648 (678 SE2d 103) (2009).

The trial court properly concluded that there is no justiciable controversy. The Center is not seeking guidance with respect to actions it might take. Rather, it seeks a declaration that past actions taken by the Repondents were ultra vires. "Where the rights of the parties have already accrued and the party seeking the declaratory judgment does not risk taking future undirected action, a declaratory judgment would be 'advisory.'" *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999). Although it is possible that the Repondents will issue letters of permission in the future, "[d]eclaratory judgment will not be rendered based on a possible or probable future contingency." (Punctuation omitted.) Id. Under these circumstances, the trial court did not err in dismissing the declaratory judgment petition.

2. The trial court did err, however, in dismissing the Center's claim for injunctive relief. "A motion to dismiss may be granted only where a plaintiff would

6

not be entitled to relief under any set of facts that could be proven in support of the plaintiff's claim." (Punctuation omitted.) *South Point Retail Partners v. North American Properties Atlanta*, 304 Ga. App. 419, 420 (696 SE2d 136) (2010).

In its complaint, the Center asserted that it was authorized to bring suit under OCGA § 12-5-245, which provides, in relevant part, that

> [u]pon a showing of any activity in violation of this part or of any ordinance or regulation adopted pursuant to this part, a temporary restraining order, a permanent or temporary injunction, or other order shall be granted without the necessity of showing lack of an adequate remedy at law and irreparable injury.

Because this Code section did not expressly waive sovereign immunity, the trial court found that the injunctive relief claim was barred.

Pretermitting whether OCGA § 12-5-245 permits a claim for injunctive relief, the Center is able to bring such a claim without running afoul of sovereign immunity. Appellate courts have "long recognized an exception to sovereign immunity where a party seeks injunctive relief against the state or a public official acting outside the scope of lawful authority." *Intl. Business Machines Corp. v. Evans*, 265 Ga. 215, 216 (453 SE2d 706) (1995). This is so because a governmental entity cannot cloak itself sovereign immunity while performing illegal acts to the detriment of its citizens. See

7

id.; see also *Chilivis v. Nat. Distrib. Co.,* 239 Ga. 651, 654 (1) (238 SE2d 431) (1977) (sovereign immunity not applicable to injunctive relief claim alleging action beyond scope of official power).

The Center's complaint clearly alleges that the CRD has issued letters of permission for activities that, under OCGA § 12-5-237, require a permit. Having alleged such ultra vires conduct, the Center should be permitted to bring suit. See *Chilivis*, 239 Ga. at 654; see also *League of Women Voters of Atlanta–Fulton County v. City of Atlanta*, 245 Ga. 301, 303 (1) (264 SE2d 859) (1980) (plaintiff may bring action to restrain public official from acting outside scope of authority). It follows that the trial court erred in dismissing the Center's claim for injunctive relief.

3. Finally, the Center asserts that the trial court erred in dismissing its due process and equal protection claims and request for attorney fees and expenses. Although the trial court dismissed these counts, it did so on the basis that the claims were either derivative of the declaratory judgment claim or moot. The trial court otherwise did not engage in any analysis regarding the viability of these claims. Moreover, neither party provides any cogent argument as to their viability. Given the lack of meaningful analysis or cogent argument, we vacate the court's ruling as to these claims and remand for consideration below in light of this Court's opinion.

*Judgment affirmed in part; reversed in part; vacated in part; and case remanded. Phipps, P. J., and Dillard, J., concur.*