FINAL COPY
294 Ga. 593

S13G0602. GEORGIA DEPARTMENT OF NATURAL RESOURCES et al. v. CENTER FOR A SUSTAINABLE COAST, INC. et al.

HUNSTEIN, Justice.

We granted certiorari in this case to determine whether the doctrine of sovereign immunity presents a bar to injunctive relief at common law. For the reasons set forth below, we find that sovereign immunity bars injunctive relief against the State at common law, and therefore, we overrule Intl. Business Machines Corp. v. Evans, 265 Ga. 215 (453 SE2d 706) (1995).

On April 5, 2011, Appellees Center for a Sustainable Coast, Inc., David R. Egan, and Melinda A. Egan (collectively, "the Center") filed a declaratory judgment suit against Appellants Georgia Department of Natural Resources ("DNR"), by and through its Director, Mark Williams; DNR's Coastal Resources Division ("CRD"), by and through its director A.G. "Spud" Woodward; and A.G. "Spud" Woodward in his official capacity as director of CRD (collectively, "the State"). In its suit, the Center seeks to enjoin the State from issuing Letters of Permission ("LOPs") to third parties authorizing land

alterations to property within the jurisdiction of the Shore Protection Act ("the Act"). OCGA § 12-5-230 et seq. The Center maintains that the State violates the Act each time it issues LOPs for activities on lands covered by the Act.

The trial court granted the State's motion to dismiss the Center's petition, finding that the Center was not entitled to declaratory relief because the State had not waived sovereign immunity, and, even if it had, there was no justiciable controversy. Additionally, the trial court dismissed the Center's request for injunctive relief based on its conclusion that this claim was directly dependent upon the viability of its declaratory judgment claim. The trial court also dismissed the Center's injunctive relief claim because the statute pursuant to which the Center sought injunctive relief, OCGA § 12-5-245, did not contain a waiver of sovereign immunity, and therefore, an injunction against the State was barred.

The Court of Appeals affirmed in part and reversed in part, finding that the trial court had correctly dismissed the Center's declaratory judgment claim as non-justiciable but improperly dismissed the injunctive relief claim. Center for a Sustainable Coast, Inc. v. Ga. Dept. of Natural Resources, 319 Ga. App. 205 (734 SE2d 206) (2012). The Court of Appeals concluded that

"[p]retermitting whether OCGA § 12-5-245 permits a claim for injunctive relief, the Center is able to bring such a claim without running afoul of sovereign immunity." Id. at 209. Relying on this Court's decision in IBM v. Evans, supra, the Court of Appeals found that the Center had sufficiently alleged that the State's actions in issuing LOPs constituted ultra vires conduct and that the common law forbids the State from cloaking itself in sovereign immunity while performing illegal acts to the detriment of its citizens. Center for a Sustainable Coast, 319 Ga. App. at 209. We granted certiorari to determine whether the Court of Appeals erred by finding that sovereign immunity was no bar to injunctive relief at common law, and whether, if the Court of Appeals did not err, the Center properly stated a claim for common law injunctive relief.[1]

In enacting the Act, the Georgia General Assembly sought to protect the State's vital natural resource system of coastal sand dunes, beaches, sandbars, and shoals by restricting development and land alterations in coastal areas. OCGA § 12-5-231. Thus, the Act allows "only activities and alterations of the

---

[1] We declined to grant certiorari as to the Court of Appeals' disposition of the Center's claims for declaratory judgment, claims pursuant to the United States Constitution, and claims for attorney fees. Therefore, this opinion does not address these issues.

sand dunes and beaches which are considered to be in the best interest of the state and which do not substantially impair the values and functions of the sand-sharing system." Id. To enforce these restrictions, the Act has required a permit for any activity that alters the natural topography or vegetation of any area within the jurisdiction of the Act:

> No person shall construct or erect any structure or construct, erect, conduct, or engage in any shoreline engineering activity or engage in any land alteration which alters the natural topography or vegetation of any area within the jurisdiction of [the Act], except in accordance with the terms and conditions of a permit therefor issued in accordance with [the Act]. A permit may authorize the construction or maintenance of the project proposed in an application. After construction of a project pursuant to a permit, the project may be maintained without a permit so long as it does not further alter the natural topography or vegetation of the site or increase the size or scope of the project.

OCGA § 12-5-237 (a) (2012).[2] Parties requesting land alterations covered under the Act must file a detailed application. OCGA § 12-5-238.[3] After receipt of

---

[2] As discussed below, the Georgia legislature amended the Act in 2013. The version quoted here was in effect at the time the Center filed its petition with the trial court and during the time in which the Center contends the State issued illegal LOPs.

[3] Application requirements include filing copies of the deed of the property, the plat showing the boundaries of the proposed site, and the site plan, as well as providing the names and addresses of all landowners adjoining or abutting the land for the proposed project. See OCGA § 12-5-238.

the application, a committee within the DNR is required to provide public notice of the proposed project at least 30 days before acting on the application. OCGA §§ 12-5-235; 12-5-239 (b).

In its complaint, the Center alleges that the State has violated the Act by issuing LOPs to authorize land alterations within the Act's jurisdiction rather than adhering to the Act's permit requirement. The Center maintains that the State is without legal authority under the Act to issue LOPs, and that under the State's illegal scheme circumventing the permit process, the Center is denied its rights to public notice and comment. We assume for purposes of this appeal that these allegations are true. See Cardinale v. City of Atlanta, 290 Ga. 521, 522 (722 SE2d 732) (2012) (de novo review applies to the dismissal of a complaint for failure to state a claim upon which relief could be granted and the complaint is construed in the light most favorable to the plaintiff).

1. In light of new developments since the Court of Appeals issued its opinion, we must first address whether this case is now moot. In May 2013, legislation was enacted expressly allowing the DNR to issue LOPs under the Act under certain circumstances. Ga. L. 2013, p. 874, §§ 1, 2, 3. See OCGA §§ 12-5-234 (a) (5) (the DNR shall have the authority "[t]o issue letters of permission

and impose a reasonable fee for processing such letters of permission"); 12-5-237 (b) (2) ("No permit shall be required for any activity conducted pursuant to a letter of permission."). These amendments to the Act became effective on July 1, 2013.

"'It is a rather fundamental rule of both equitable jurisprudence and appellate procedure, that if the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot.'" Jackson v. Bibb County School Dist., 271 Ga. 18, 19 (515 SE2d 151) (1999). When the remedy sought in the trial court is no longer available, then the matter is moot and no longer subject to appeal. Brown v. Spann, 271 Ga. 495 (520 SE2d 909) (1999) (case was moot because the sale of a radio station's broadcast license sought to be enjoined by the plaintiffs had already occurred by the time the appeal was heard).

Here, the Center seeks to stop the DNR from issuing LOPs without lawful authority. This relief is still attainable by the Center: the remedy of enjoining the State from issuing LOPs, or the State voluntarily ceasing to issue LOPs, has not occurred. Therefore, even though under the new law the Center may now face greater difficulty proving the merits of its claim, the case is not moot. See

Richardson v. Phillips, 302 Ga. App. 305, 311 (2) (690 SE2d 918) (2010) (case was not moot because the relief sought by the plaintiff was still available to him despite prior business transactions).

This is also not a case where the Court is being asked to determine an abstract question which does not arise upon existing facts or rights. See Collins v. Lombard Corp., 270 Ga. 120 (1) (508 SE2d 653) (1998) ("a case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights"). Instead, there is a concrete question of whether the Center could enjoin the State from issuing LOPs even under the new law. For example, the new law specifically defines LOPs as authorization to conduct a proposed activity on land protected by the Act, as long as that activity is "either within the physical perimeter of an existing serviceable project or involves the construction and removal of a project or other temporary activity that concludes within six months." OCGA § 12-5-232 (9.1). The Center may still have a challenge against any LOP that does not meet this definition, and without the benefit of discovery, we cannot conclude definitively that all of the LOPs about which the Center complains meet this criteria. Thus, the existing facts do not make the legal issue of whether the State's issuance of

LOPs is an ultra vires act an abstract question, and the Center may still be able to achieve the injunctive relief it seeks. Cf. City of Comer v. Seymour, 283 Ga. 536, 537 (661 SE2d 539) (2008) (the case was moot where operation of a haunted house sought to be enjoined had ceased and therefore any judicial determination would be an abstract exercise unrelated to any existing facts).

2. Turning to the issue of sovereign immunity, our review of this question of law is de novo. See Luangkhot v. State, 292 Ga. 423, 424 (736 SE2d 397) (2013). The Court of Appeals relied heavily on our holding in IBM v. Evans, supra, to hold that sovereign immunity did not bar the Center's claim for injunctive relief at common law. Having thoroughly reviewed the underpinnings of this holding, we now hold that sovereign immunity is a bar to injunctive relief at common law, and thus, we overrule IBM v. Evans.

In IBM v. Evans, plaintiff IBM sued the Georgia Department of Administrative Services ("DOAS") and its commissioner in his official capacity to enjoin the DOAS' award of a state contract to a third party, or, in the alternative, to have DOAS re-bid the contract. 265 Ga. at 215. DOAS and the commissioner both argued that sovereign immunity barred injunctive relief against them, and the trial court dismissed the action on this ground. Id. at 215-

8

216. We disagreed, recognizing "an exception to sovereign immunity where a party seeks injunctive relief against the state or a public official acting outside the scope of lawful authority." Id. at 216. We explained that "[t]o avoid the harsh results sovereign immunity would impose, the court has often employed the legal fiction that such a suit is not a suit against the state, but against an errant official, even though the purpose of the suit is to control state action through state employees." Id. We noted that if an act was legal, then sovereign immunity applied, but that if an act was illegal, then sovereign immunity was no bar. Id. In an effort to clarify the "legal fictions and circular reasoning" surrounding sovereign immunity, we recognized an "exception" to sovereign immunity to permit, what we hoped, would be "a more logical analysis." Id. We held that this "exception" was separate and distinct from a "waiver," and therefore, we were not barred by our constitutional provisions granting only the General Assembly the power to waive the State's sovereign immunity. Id.

After a full review of this case and the history of sovereign immunity in our State, we find that IBM v. Evans is unsound for four reasons: (1) the clear language of our Constitution authorizes only the General Assembly to waive sovereign immunity; (2) our Constitution does not provide for an exception to

the General Assembly's exclusive authority to waive sovereign immunity; (3) in IBM v. Evans we mischaracterized a waiver of sovereign immunity as an exception to sovereign immunity; and (4) cases we relied on in IBM v. Evans either predate the incorporation of sovereign immunity into our state Constitution or ignored the impact thereof.

First, a brief history of sovereign immunity in Georgia shows that only the General Assembly may waive sovereign immunity for the State. In 1784, Georgia adopted the common law doctrine of sovereign immunity, which protected governments at all levels from unconsented-to legal actions. Gilbert v. Richardson, 264 Ga. 744 (1) (452 SE2d 476) (1994). This common law doctrine of sovereign immunity was afforded constitutional status in 1974. Id. at 745, n. 2. The 1974 amendment provided that sovereign immunity was expressly reserved and could only be waived by our Constitution or legislature. See R. P. Sentell, Jr., Local Government Tort Liability: The Summer Of '92, 9 Ga. St. U.L. Rev. 405, 407 (1993). We thus recognized that the courts no longer had the authority to abrogate or modify the doctrine, as they had when sovereign immunity was a product of the common law rather than constitutional law. Sheley v. Bd. of Public Ed. for City of Savannah, 233 Ga. 487 (212 SE2d 627)

10

(1975) ("Because of the adoption of this constitutional amendment, and it is now effective as a part of our Constitution, we hold that the immunity rule as it has heretofore existed in this state cannot be abrogated or modified by this court.").

The Constitution of 1983 changed this express reservation of sovereign immunity to the legislature. Pursuant to the constitutional amendments of 1983, the State had the power to waive sovereign immunity for damages claims for which liability insurance existed, up to the extent of any insurance coverage. Sentell, 9 Ga. St. U.L. Rev. at 407-408 (quoting the text of the 1983 constitutional amendments); see also Gilbert, 264 Ga. at 745-746. At this time, courts found that counties, school districts, and municipalities could also waive sovereign immunity by purchasing insurance. Sentell, 9 Ga. St. U.L. Rev. at 408-410 (collecting and explaining cases). This was an important distinction from the 1974 amendment because, pursuant to the 1983 amendment, state agencies and departments themselves could waive sovereign immunity without having to rely on the legislature to do so. See id.

However, the 1991 amendment to our Constitution restored to the legislature the exclusive power to waive sovereign immunity. See Sentell, 9 Ga.

State U.L. Rev. at 412 (the 1991 amendment was a "repeal of, and replacement

for" the 1983 amendment).  This amendment reads as follows:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies <u>can only be waived by an Act of the General Assembly</u> which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. Art. I, Sec. II, Par. IX (e) (emphasis supplied).

> "'In construing a constitutional provision, the ordinary signification

shall be applied to words.'" <u>Blum v. Schrader</u>, 281 Ga. 238 (1) (637 SE2d

396) (2006).

> [T]his Court must honor the plain and unambiguous meaning of a constitutional provision. Our duty is to construe and apply the Constitution as it is now written.  Where the natural and reasonable meaning of a constitutional provision is clear and capable of a natural and reasonable construction, courts are not authorized either to read into or read out that which would add to or change its meaning.

Id. at 239-240 (2) (citations and punctuation omitted).  The plain and

unambiguous text of the 1991 constitutional amendment shows that only

the General Assembly has the authority to waive the State's sovereign

immunity.  <u>Gilbert</u>, 264 Ga. at 748 (subsection (e) of the amendment

"confers upon the legislature the authority to waive sovereign immunity"); see also Woodard v. Laurens County, 265 Ga. 404 (1) (456 SE2d 581) (1995) ("A waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace."). The history of sovereign immunity in our State shows that the 1991 amendment intended to expressly reserve the power to waive sovereign immunity exclusively to the legislature. See IBM v. Evans, 265 Ga. at 219 (Benham, P. J., concurring in part and dissenting in part) ("The first sentence of subparagraph (e) reiterates the long-standing principle that sovereign immunity extends to the state and its departments and agencies, with a few constitutionally-specified exceptions."); Sentell, 9 Ga. St. U.L. Rev. at 408-417 (recognizing that the 1991 amendment "effects a major constitutional retreat from 1983, and reclaims an earlier approach" returning the "power of immunity waiver exclusively to the General Assembly"); see also Donaldson v. Dept. of Transp., 262 Ga. 49, 50 (414 SE2d 638) (1992) (the 1991 amendment "extend[s] sovereign immunity to all state departments and agencies, regardless of any insurance").

In IBM v. Evans we minimized the effect of the 1991 amendment,

finding that it had merely changed the manner in which the State waived its immunity by removing the insurance waiver that existed under the 1983 amendment. 265 Ga. at 217. However, the amendment "does much more than change the way of waiver" by granting exclusive power to the legislature to waive sovereign immunity. Id. at 219 (Benham, P. J., concurring in part and dissenting in part). Accordingly, the plain language of Paragraph IX (e) explicitly bars suits against the State or its officers and employees sued in their official capacities,[4] until and unless sovereign immunity has been waived by the General Assembly.

Second, the straightforward text of the 1991 amendment does not allow for exceptions. IBM v. Evans wrongly recognized an exception to sovereign immunity for suits seeking injunctive relief to restrain an illegal act. 265 Ga. at 216. In IBM v. Evans we distinguished between exceptions to sovereign immunity, which the judiciary could create, and waivers of sovereign immunity, which the General Assembly could create. 265 Ga. at 217. Yet, because the amendment is "clear and capable of a

_____

[4] Sovereign immunity applies to public employees sued in their official capacities because these "are in reality suits against the state." Cameron v. Lang, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

14

natural and reasonable construction," we may not read an exception into the text or interpret the text to provide for an exception where none is present. See Blum, 281 Ga. at 239. We agree with the State's argument that if we were to create exceptions to sovereign immunity, the exceptions could swallow the rule permitting only the General Assembly to do so.

Third, in IBM v. Evans we misconstrued a proper waiver of sovereign immunity as an exception to sovereign immunity. We concluded in IBM v. Evans that the 1991 constitutional amendment did not apply to waive sovereign immunity "because sovereign immunity has *never* applied to bar this type of action seeking injunctive relief." 265 Ga. at 217. We cited City of Thomasville v. Shank, 263 Ga. 624 (1) (437 SE2d 306) (1993), for this proposition. IBM v. Evans, 265 Ga. at 217. In Shank, we recognized a "nuisance exception" to sovereign immunity and "reaffirm[ed] the longstanding principle that a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property." 263 Ga. at 625. Though denominated as an "exception" in Shank, the rationale behind it is rooted in the concept that the government may not take or damage private property for public

purposes without just and adequate compensation. 263 Ga. at 624-625. See Ga. Const., Art. I, Sec. III, Par. I (a) (eminent domain); Columbia County v. Doolittle, 270 Ga. 490 (1) (512 SE2d 236) (1999) (explaining that the eminent domain provision of the Georgia Constitution waives sovereign immunity in an inverse condemnation action, and therefore, a county may be sued for damages and enjoined for creating or maintaining a nuisance); Rutherford v. DeKalb County, 287 Ga. App. 366 (2) (651 SE2d 771) (2007) (noting that a county may be liable through inverse condemnation when a nuisance amounts to a taking of property for public purposes because sovereign immunity is waived by the State Constitution's eminent domain provision). Thus, the "nuisance exception" recognized in Shank was not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases. As such, Shank does not support the conclusion in IBM v. Evans that the 1991 constitutional amendment was not implicated nor did it give us the authority in IBM v. Evans to create exceptions to sovereign immunity not recognized under our Constitution.

16

Fourth, IBM v. Evans was wrongly decided because many of the cases it relied upon predate the constitutional ratification of sovereign immunity in 1974. See Undercofler v. Seaboard Air Line R. Co., 222 Ga. 822 (152 SE2d 878) (1966); Irwin v. Crawford, 210 Ga. 222 (78 SE2d 609) (1953); Cannon v. Montgomery, 184 Ga. 588 (192 SE 206) (1937). Opinions of Georgia appellate courts dealing with the judicial application of sovereign immunity prior to the 1974 constitutional amendment are not applicable to claims against the State arising after the 1974 amendment because the 1974 amendment created "'an entirely new ball game'" with regard to sovereign immunity. Southern LNG, Inc. v. MacGinnitie, 290 Ga. 204, 208 (1) (719 SE2d 473) (2011) (Benham, J., dissenting). Additionally, the two cases relied upon by IBM v. Evans that do not predate the 1974 amendment did not consider the effect of the amendment or discuss the constitutional text. See Chilivis v. Nat. Distrib. Co., 239 Ga. 651 (1) (238 SE2d 431) (1977) (not addressing the constitutional language and relying on pre-1974 cases); Evans v. Just Open Govt., 242 Ga. 834, 843-844 (251 SE2d 546) (1979) (Hill, J., concurring specially) (omitting discussion of the constitutional text). For all of these reasons, our holding

17

in IBM v. Evans is unsound.

In deciding whether to overrule our prior precedent, we have recognized that "[s]tare decisis is an important doctrine, but it is not a straightjacket." State v. Jackson, 287 Ga. 646, 647 (697 SE2d 757) (2010).

> The doctrine of stare decisis is always important, but it is less compelling when, as in this case, the issue is the meaning of a constitutional provision. That is because it is much harder for the democratic process to correct or alter our interpretation of the Constitution than our interpretation of a statute or regulation.

Smith v. Baptiste, 287 Ga. 23, 30 (1) (694 SE2d 83) (2010) (Nahmias, J., concurring specially). We consider factors such as "the age of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning" in deciding whether to overrule a prior decision. Jackson, 287 Ga. at 658 (5); see also Smith, 287 Ga. at 32 (Nahmias, J., concurring specially).

As explained above, the holding of IBM v. Evans is unsound because it is contrary to the explicit text of the Constitution. It is less than 20 years old. See, e.g., Jackson, 287 Ga. at 658 (5) (overruling 29-year-old case); Sharpe v. Dept. of Transp., 267 Ga. 267 (2) (476 SE2d 722) (1996)

18

(overruling 90-year-old decision). The reliance on IBM v. Evans is limited; our research has uncovered only four published cases that have applied its holding to allow plaintiffs to bring a case against the State. In other cases since we decided IBM v. Evans, we have repeatedly held that sovereign immunity could only be waived by the General Assembly. See, e.g., Johnson v. Ga. Dept. of Human Res., 278 Ga. 714, 715 (1) (606 SE2d 270) (2004) ("under the Georgia Constitution, the sovereign immunity of the State may be waived only as provided by the Legislature in a tort claims act or an act of the Legislature which specifically provides that sovereign immunity is waived and sets forth the extent of such waiver"). Additionally, as the State points out, then Presiding Justice Benham's vigorous dissent put litigants on notice that two members of the Court believed the majority's conclusion in IBM v. Evans was incorrect. 265 Ga. at 219-220 (Benham, P. J., concurring in part and dissenting in part). Finally, a bright line rule that only the Constitution itself or a specific waiver by the General Assembly can abrogate sovereign immunity is more workable than IBM v. Evans' scheme allowing judicially created exceptions. Thus, after weighing all of these considerations, we believe

19

that by overruling IBM v. Evans we have not only restored a "more logical analysis," id. at 216, but also reaffirmed the only natural and reasonable reading of Paragraph IX regarding waivers and sovereign immunity.

Not only does sovereign immunity bar the Center's claim for injunctive relief against the State at common law, but it also bars the Center's claim for injunctive relief pursuant to OCGA § 12-5-245. We agree with the trial court that there is no waiver of sovereign immunity found in OCGA § 12-5-245.[5] This section of the Act provides:

> Any activity in violation of this part or of any ordinance or regulation adopted pursuant to this part shall be a public nuisance; and such activity may be enjoined or abated by an action filed in the appropriate superior court by the Attorney General on behalf of the department, by any local unit of government affected, or by any person. Upon showing of any activity in violation of this part or of any ordinance or regulation adopted pursuant to this part, a temporary restraining order, a permanent or temporary injunction, or other order shall be granted without the necessity of showing lack of an adequate remedy at law and irreparable injury. . . .

Id.

_____

[5] The Court of Appeals did not rule on whether sovereign immunity barred the Center's claim for injunctive relief pursuant to OCGA § 12-5-245 and instead found the claim viable under the common law. Center for a Sustainable Coast, 319 Ga. App. at 209 ("Pretermitting whether OCGA § 12-5-245 permits a claim for injunctive relief, the Center is able to bring such a claim" under the common law.).

In construing [a] statute, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

Currid v. DeKalb State Court Probation Dept., 285 Ga. 184, 187 (674 SE2d 894) (2009). The plain language of OCGA § 12-5-245 does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, and therefore, no waiver can be implied or shown. See id. In considering the Act as a whole, it is clear that the General Assembly did not intend to waive sovereign immunity. See OCGA § 12-5-230 et seq. (no specific waiver or mention of a waiver of sovereign immunity). Moreover, even if there was a waiver of sovereign immunity, the Center cannot obtain an injunction against the State pursuant to OCGA § 12-5-245 because the statute is directed toward "activity" of persons that alters the lands covered under the Act and is not directed toward regulating the State's permitting of such activity. Therefore, the Center's request for injunctive relief pursuant to OCGA § 12-5-245 is barred.

Our decision today does not mean that citizens aggrieved by the

unlawful conduct of public officers are without recourse. It means only that they must seek relief against such officers in their individual capacities. In some cases, qualified official immunity may limit the availability of such relief, but sovereign immunity generally will pose no bar. See IBM v. Evans, 265 Ga. at 220-222 (Benham, P. J., concurring in part and dissenting in part).

Accordingly, because we overrule IBM v. Evans, we conclude that the Court of Appeals erred when it reversed the trial court's dismissal of the Center's claim for injunctive relief based on sovereign immunity. We hold that sovereign immunity bars the Center's claim for injunctive relief against the State in this case, whether the Center brings that claim pursuant to the common law or OCGA § 12-5-245, and therefore, we reverse the judgment of the Court of Appeals insofar as it held the Center's claim for injunctive relief to be viable.

3. In light of our discussion above, we need not address whether the Court of Appeals erred when it held that the Center otherwise properly stated a claim upon which relief could be granted for injunctive relief at

22

common law.[6]

Judgment reversed. All the Justices concur.

Decided February 24, 2014.

Certiorari to the Court of Appeals of Georgia – 319 Ga. App. 205.

Samuel S. Olens, Attorney General, Issac Byrd, Deputy Attorney General, John E. Hennelly, Senior Assistant Attorney General, James D. Coots, Assistant Attorney General, Nels S. D. Peterson, Solicitor-General, for appellants.

Stack & Associates, Donald D. J. Stack, Jennifer R. Rhoton Culler, for appellees.

---

[6] We deny the Center's motion to strike the State's supplemental brief.