RAMSEY *et al. v.* HAMILTON, State Treasurer, *et al.*

366

No. 11030. October 19, 1935.

*J. C. Savage* and *Bond Almand,* for plaintiffs.

*Marion Smith, M. J. Yeomans, attorney-general,* and *B. D. Murphy, assistant attorney-general,* for defendants.

GILBERT, Justice. Ralph L. Ramsey and others hereinafter mentioned filed in the superior court of Fulton County an equitable petition against George B. Hamilton, treasurer of the State of Georgia, William B. Harrison, comptroller-general of the State of Georgia, and the Regents of the University System of Georgia, seeking to restrain and enjoin the said treasurer and comptroller-general from paying to the said regents a sum of money appropriated by the act of 1935 (Ga. Laws 1935, p. 9) for use in erecting necessary structures at the various units of the University System, and to restrain and enjoin the regents from receiving and expending the same. The petition alleged that the various parties are citizens and taxpayers of the State of Georgia; that Ramsey is a teacher in the public schools of Fulton County, and has children in the public schools of Atlanta; that he owns certain real estate on which he pays an ad valorem tax at an assessed value of $1900; that among other taxes paid by him there is a four-mills State tax assessed against said property, which he paid in 1934 and will pay for the year 1935, which ad valorem tax is collected and paid into the State treasury, and out of which funds the common schools of the State, of which the Fulton County schools are a part, receive part of the funds appropriated to the common schools; that a part of his salary is paid out of the common-school fund from the State treasury; that the Fulton County public-school system has been allotted for the year the sum of $107,621.06

out of the common-school fund of the State; that the State superintendent of schools has notified the county superintendent of schools of Fulton County to discount the allotment 20 per cent., and they are now being operated accordingly; that if the Fulton County school system fails to get its full allotment in 1935, his salary will be reduced; that petitioners Nance, Petry, Jeffries, Morgan, Spires, and Livsey are named as parties in their individual capacity, as well as constituting the Executive Committee of the Georgia Federation of Labor, an unincorporated association, among the members of whom are several hundred men and women engaged in teaching in the common schools of the State; that Nance is a resident and taxpayer of Fulton County, with children in the public schools of Atlanta; that he owns and pays taxes on real estate in said county and is interested in seeing that the tax money he contributes to the support of the State government, and particularly the common schools and eleemosynary institutions, is lawfully paid as provided by law; that Petry is a resident and taxpayer of Fulton County, with children in the public schools of Atlanta; that his wife is confined in the State Hospital at Milledgeville, which is supported out of funds appropriated from the general treasury; that part of the tax he pays to the State of Georgia is used for the support of said hospital and the common schools, and if the annual appropriation to the said hospital is cut 20 per cent. below the amount appropriated for 1935 it will cause a reduction in the attention and treatment accorded to his wife; and that no funds from the general treasury shall be paid to the regents of the University System, under the special appropriation of 1935, until the annual appropriation to said hospital has been paid in full for the year 1935; that petitioners Jeffries, Morgan, Spires, and Rivers are respectively residents and taxpayers of the counties of Muscogee, Bibb, Chatham, and Richmond, and that petitioners Mitchell, Reynolds, and Livsey, are residents of Fulton County and employed in the Atlanta public school system, which is supported in part by funds allotted and paid out of the common-school fund in the State treasury, and the compensation paid them comes in part from such allocated funds.

The petition further alleged that the act of 1935 is unconstitutional, illegal and void, for several reasons which, in the view we take of the case, need not be stated. The prayer was that "the

defendant William B. Harrison, as comptroller-general of the State of Georgia," be restrained and enjoined from countersigning any warrant drawn by the Governor of Georgia, directed to "George B. Hamilton, as treasurer of the State of Georgia," authorizing the payment of $333,333.33 or any part of said sum to the said "Regents of the University System of Georgia;" that the defendant "George B. Hamilton, as treasurer of the State of Georgia," be restrained and enjoined from paying out on any warrant or order to the Governor of the State of Georgia, or any one else, the sum of $333,333.33, or any part of said sum, to the "Regents of the University System of Georgia," that the act of 1935 be declared unconstitutional and void; and "that the Regents of the University System of Georgia, its officers and agents," be restrained and enjoined from receiving the said sum or any part thereof "from the defendant Hamilton, as treasurer, or the State of Georgia, or any one on his behalf," and be further restrained and enjoined from spending any funds by way of travel or otherwise for the purpose of obtaining a grant or gift of funds from the United States Government, or by way of preparation and plans in the nature of fees for compensation to architects or contractors; and for such other equitable relief as might be meet and proper. The defendants filed an answer, and also demurred on the grounds that the petition did not set forth a cause of action; that the petitioners had no such interest in the subject-matter of the litigation as would authorize them to maintain the suit; that the petition was in effect and purpose a suit against the State of Georgia without its consent; that the State was a necessary and indispensable party to the action; and that the petition failed to show that the appropriations made to the regents could not be legally paid from the State treasury. After hearing evidence the court sustained the demurrer, and by separate decree denied an injunction. The petitioners excepted.

We have not set out in the foregoing statement the evidence which was heard by the court, because we are of the opinion that the general demurrer was properly sustained, and only a discussion of the case in that respect is necessary. The petition was not filed against the State officers in their individual, but in their official, capacity; and the law to be applied must be considered accordingly. It is ordinarily the rule that when it is sought to

restrain and enjoin State officers in their official capacity from doing an alleged illegal act, the suit must be brought by the attorney-general of the State. *Peeples* v. *Byrd,* 98 *Ga.* 688 (4) (25 S. E. 677). In that case it was said: "No citizen or taxpayer, as such, has the right to institute in his own name an equitable petition against the reporter and the person with whom he, under the Governor's approval, has made a contract to publish the Supreme Court Reports, for the purpose of testing the legality of that contract or of interfering with the carrying out of the same; because the State, being a party to the contract, would be a necessary party to the case, and as it can not be subjected to an action of any kind without its own express consent, such a petition can not be maintained." In *Sanders* v. *Ballard,* 160 *Ga.* 366 (127 S. E. 851), the suit was against the defendant in his official capacity as State superintendent of schools, but the question of the unconstitutionality of the statute under which he acted was not raised, though it was contended that he had no authority to do what he was seeking to do under the act. It was ruled as follows: "No citizen or taxpayer, as such, has the right to institute in his own name an equitable petition against a public officer acting within the scope of his authority for or on behalf of the State of Georgia, unless it should appear that the public duty was one owing to individuals, and unless it is shown that the petitioner has suffered some special and peculiar injury from the wrongful act of which he complains. *Peeples* v. *Byrd,* 98 *Ga.* 688, 696 (25 S. E. 677); *Southern Mining Co.* v. *Lowe,* 105 *Ga.* 352, 356 (31 S. E. 191); *Hudspeth* v. *Hall,* 113 *Ga.* 4, 7 (38 S. E. 358, 84 Am. St. R. 200); *Davison-Nicholson Co.* v. *Pound,* 147 *Ga.* 447 (4 *a*) (94 S. E. 560)." In *Holt* v. *Fayetteville,* 169 *Ga.* 126, 131 (149 S. E. 892), it was held: "The court erred in overruling the demurrers, to which judgment exception was taken pendente lite. The petitioners were citizens and taxpayers of the City of Fayetteville, and no reason appeared for their intervention in the municipal matter; and the filing of an action, if brought, should have been initiated by the municipality itself. The petition did not disclose that there was any valid reason why the petitioners should have substituted themselves as plaintiffs for the municipal authorities of the city; nor, indeed, why there was any special or peculiar ground by reason of which petitioners were authorized to

prosecute the action for the benefit of the city." Chief Justice Russell, speaking for the court, said: "It is our opinion that a citizen can not complain of wrongs to a municipality, any more than a stockholder in a private corporation can complain under similar circumstances of an omission of the officers and directors of such corporation to do what stockholders think is proper, without first demanding or requesting that such officers and directors themselves institute proper proceedings. . . The petitioners, as mere citizens and taxpayers, had no right to use any of the funds said to be in the hands of Holt [the former treasurer] for any purpose; nor had they a right to apply for a receiver in order to maintain the status quo, unless the mayor and council had refused to take any steps in that direction, if indeed they would have been entitled then, though in those circumstances the case would have been altogether different from the one before us. . . The fact that it does not appear from the petition that the petitioners were subject to suffer any special or peculiar injury affords *another reason* why the demurrer should have been sustained." He then quoted, to the same effect, from *Sanders* v. *Ballard,* supra, *Cannon* v. *Merry,* 116 *Ga.* 291, 293 (42 S. E. 274), *Peeples* v. *Byrd,* supra, and *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602). See also *Perkins* v. *Madison,* 175 *Ga.* 714 (3) (165 S. E. 811).

The special interest or private injury which, according to the decisions cited above, must be shown in order for a petitioner to maintain an action of this kind is not set forth in this petition. Ramsey is alleged to be a teacher in the county schools, and his salary may be reduced if the common schools do not receive their full allotment for the year 1935. His position does not give him any property right, and he does not so allege. He has no contract with the State, and is not an employee of the State. Even if his salary should be reduced, which indeed is not alleged, by the showing of any facts, to be inevitable, he would not have a claim against the State in a court of equity. Nor does the fact that he pays, with other citizens, an ad valorem tax, a part of which goes to the common schools of Fulton County, give him any standing in equity if the amount of such funds or his salary be reduced. It is alleged that the others are taxpayers and citizens, and that some of them constitute the Executive Committee of the Georgia Federation of Labor, an unincorporated association,

among whom are several hundred members who are teachers in the common schools of the State. They have no contract with the State and no right cognizable in a court of equity in case their salaries should be reduced. It is alleged that the petitioner Nance owns real estate upon which he pays taxes, and is interested in seeing that the tax money he pays is lawfully paid for the purpose intended, and that he has children in the public schools. Thus is shown a general interest with other citizens, but no facts upon which to claim that he would suffer a private injury or has a special interest. Another petitioner alleges that he is a taxpayer with children in the public schools of Atlanta and with a wife confined in the State Hospital at Milledgeville, and that a part of the money he pays as taxes is for the support of the common schools and said hospital, and that if the annual appropriation to the hospital is cut it will result in a reduction of the treatment accorded his wife. There is no contract with the State to care for his wife, or to teach his children in any particular school or grade at public expense. Even if this were a case where such would authorize an action, we find no allegation showing special interest or peculiar injury. But it is urged in the brief of the plaintiffs, while conceding the rule laid down in *Sanders* v. *Ballard,* supra, and cit., that they have a standing in court because a citizen and taxpayer has the right to "restrain the action of a public officer where such officer is acting (1) under an unconstitutional or void statute, or (2) illegally and beyond the scope of lawful authority." In support of the contention a number of cases against counties and municipalities, or the officers thereof, are set forth and discussed; and it is argued that no sound distinction can be made in the case of a citizen and taxpayer seeking to enjoin officers of a municipality or county acting under a law alleged to be invalid and in the case of a citizen and taxpayer seeking to enjoin State officers who are alleged to be acting under an unconstitutional statute. Such a position has been taken in a number of jurisdictions; but we think that those which make the distinction that the State, being a sovereignty, stands upon a different footing offer the sounder view.

Mr. Pomeroy in his excellent work on Equity Jurisprudence, vol. 4 (ed. 1919), § 1748, says, in quoting from a well-considered case, Jones *v.* Reed, 3 Wash. 57 (27 Pac. 1067): "'The principle

upon which the doctrine in regard to municipal, or quasi municipal, corporations is based, flows from its analogy to a well-settled doctrine in equity governing private corporations, where each stockholder has an interest in the property of the corporation, and may interfere to protect the corporate funds from the illegal or fraudulent acts of its officers. But this reasoning can not apply to a State government. The county is a quasi corporation; the State is a sovereignty. The county only possesses such powers as the legislature of the State confers upon it. Its revenues, its property, its very existence, depend upon statutory enactment. It can be enlarged, dismembered, or annihilated, at the will of the State. The State, on the contrary, has all the powers not relinquished to the general government by the articles of federation, and, subject to these relinquishments, its sovereignty is supreme. One of the necessary attributes of sovereignty is the protection of the sovereign power and the maintenance of the State organization.' Hence it would seem that an injunction should not issue against a State officer unless some special and direct injury to the plaintiff is shown." Let it be borne in mind that we are not dealing with the case of a taxpayer bringing suit against one who, while pretending to act within the scope of his employment and authority as a State official, is in fact trespassing upon any right of the complainant, legal or equitable. The present suit is plainly and avowedly against the officers *in their official capacity*. In the first paragraph of the petition it is asserted that "this action is brought against said named parties in their respective official capacity," and the prayers are "that the defendant William B. Harrison, *as comptroller-general of the State of Georgia,*" etc., and "that the defendant George B. Hamilton, *as treasurer of the State of Georgia,*" etc., and "that the Regents of the University System of Georgia, its officers and agents" be enjoined from receiving "from the defendant Hamilton, *as treasurer,* or *the State of Georgia,*" etc. (Italics ours.) The denominations are the antitheses of descriptio personæ, and the present suit is manifestly against the officers in their official capacity and not as individuals, and is as to a matter in which the officers have no personal interest as individuals but are acting for and on behalf of the State of Georgia.

Whether injunction would lie to restrain the acts of a defendant

depends upon whether the relief sought is really against the State. The question whether a suit by a taxpayer is against the State in fact, rather than against the named parties, has some times been dealt with by the Supreme Court of the United States because of the 11th amendment to the Federal constitution being invoked. In In re Ayers, 123 U. S. 443, one of the headnotes states: "Whether a State is the actual party defendant in a suit, within the meaning of the 11th amendment to the constitution of the United States, is to be determined by a consideration of the nature of the case as presented by the whole record, and not in every case by a reference to the nominal parties of the record." In the third headnote it is stated: "In order to secure the manifest purpose of the constitutional exemption guaranteed by the 11th amendment, it should be interpreted not literally and too narrowly, but with the breadth and largeness necessary to enable it to accomplish its purpose; and must be held to cover, not only suits brought against a State by name, but those against its officers, agents, and representatives, where the State, though not named, is the real party against which the relief is asked and the judgment will operate." In Pennoyer v. McConnaughy, 140 U. S. 1, 9 (11 Sup. Ct. 699, 35 L. ed. 363), Mr. Justice Lamar reviewed the cases in which suits brought against officials of a State were held, in the United States Supreme Court, to be against the State or persons holding office under the State. He said: "In the application of the latter principle [that a suit against the officers of a State, to compel them to do the acts which constitute a performance by it of its contracts, is in effect a suit against the State itself] two classes of cases have appeared in the decisions of this court, and it is in determining to which class a particular case belongs that different views have been presented. The first class is where the suit is brought against the officers of the State, as representing the State's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts. In re Ayers, 123 U. S. 443 [8 Sup. Ct. 164, 31 L. ed. 216]; Louisiana v. Jumel, 107 U. S. 711 [2 Sup. Ct. 128, 27 L. ed. 448]; Antoni v. Greenhow, 107 U. S. 769 [2 Sup. Ct. 91, 27 L. ed. 468]; Cunningham v. Macon & Brunswick Railroad, 109 U. S. 446 [3 Sup. Ct. 292, 609, 27 L. ed. 992]; Hagood v. South-

ern, 117 U. S. 52 [6 Sup. Ct. 608, 29 L. ed. 805]. The other class is where a suit is brought against the defendants who, claiming to act as officers of the State, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the State. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the State, or for compensation in damages, or, in a proper case where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain, legal duty, purely ministerial—is not, within the meaning of the eleventh amendment, an action against the State. Osborne v. Bank of the United States, 9 Wheat. 738 [6 L. ed. 204]; Davis v. Gray, 16 Wall. 203 [21 L. ed. 447]; Tomlinson v. Branch, 15 Wall. 460 [21 L. ed. 189]; Litchfield v. Webster County, 101 U. S. 773 [25 L. ed. 925]; Allen v. Baltimore & Ohio Railroad, 114 U. S. 311 [5 Sup. Ct. 925, 962, 29 L. ed. 200]; Board of Liquidation v. McComb, 92 U. S. 531 [23 L. ed. 623]; Poindexter v. Greenhow, 114 U. S. 270 [5 Sup. Ct. 903, 962, 29 L. ed. 185]."

The case of *Dennison Mfg. Co.* v. *Wright,* 156 *Ga.* 789, 794 (120 S. E. 120), is one which falls in the second class above described. The action was held not to be a suit against the State, the petition naming as defendant one who was at the time comptroller-general of the State, but not as defendant in his official capacity. As was said by Mr. Justice Hines, the use of the language, "who is comptroller-general of the State of Georgia," after the name of the defendant was strictly descriptio personæ, and the suit was not aimed at the State. There is nothing in that decision which is contrary to what we here hold, that is, that a citizen and taxpayer, whatever may be his right to maintain a suit against a municipality, a corporation, or a county, a quasi corporation, has no right in a court of equity to bring, without the consent of the State, a suit to enjoin the State, through its State officers, in their official capacity, from proceeding to execute their duties for and on behalf of the State under a statute which the taxpayer claims to be unconstitutional. The alleged unconstitutionality of a statute in such a case does not of itself afford a cause of action, and to sanction such an action would be for this court to invade

the realm of another department of government which by art. 1, sec. 1, par. 23, of the State constitution it is forbidden to do. "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." It is fundamental that a State can not be sued against its will, and in the petition it is not claimed that the present suit is other than a suit against the State officers in their official capacity, and hence against the State. It is to no nicety of comparison, as is indulged in some jurisdictions, between suits against municipalities and those against the State, that we look for an answer to the question here presented; we base our conclusions upon the fundamental sovereignty of the State and the constitutional inhibitions in its behalf. As was well said by Mr. Justice Lumpkin in *Peeples* v. *Byrd,* supra, and quoted with approval by Chief Justice Russell in *Holt* v. *Fayetteville,* supra, "Unless the conclusions we have reached are correct, any taxpayer of the State could set himself up as the censor morum of the Governor and other public officers of the State, and undertake to supervise their official action as to matters in which he had no personal interest whatever." In a very old case, *Printup* v. *Cherokee Railroad Co., 45 Ga.* 365, it was held: "The State of Georgia can not be made a party defendant in a suit, in any court, except by consent of the proper authorities; nor can this be done so as to affect the rights of the State by making the agent of the State, appointed by its authorities, a party; and any judgment against such agent can not affect the rights of the State, or affect its position."

In the well-considered case In re Ayers, 123 U. S. 443, 505 (supra), to which we have previously adverted, it was said: "The very object and purpose of the 11th amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private individuals. It was thought to be neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons, whether citizens of other States or aliens, or that the course of their public policy and the administration of their public affairs should be

subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests." Then it is shown under what circumstances a suit may be brought against a State officer as an individual: "But this is not intended in any way to impinge upon the principle which justifies suits against individual defendants, who, under color of the authority of unconstitutional legislation by the State, are guilty of personal trespasses and wrongs, nor to forbid suits against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits *are authorized by law,* and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a *legal interest."* (Italics ours.) In a more recent case, Massachussetts *v.* Mellon, 262 U. S. 447 (43 Sup. Ct. 597, 67 L. ed. 1078), where a taxpayer sought to enjoin the enforcement of a Federal appropriation on the ground that it was invalid and would increase the burden of his taxes, the United States Supreme Court said: "If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect to the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character can not be maintained. It is of much significance that no precedent sustaining the right to maintain suits like this has been called to our attention, although, since the formation of the government, as an examination of the acts of Congress will disclose, a large number of statutes appropriating or involving the expenditure of moneys for non-Federal purposes have been enacted and carried into effect."

One of the most recent cases, and a very learned decision, is that of Asplund *v.* Hannett, 31 N. M. 641 (249 Pac. 1074, 58 A. L. R. 573). It is followed by a helpful annotation by the editors of A. L. R. The court recognizes that there is a lack of uniformity in the decisions on the question. The opinion is lengthy and covers a wide range. A portion of it is deemed apposite, viz.: "Exception has been made where the threatened injury to taxpayers consists in devastavit of municipal funds. This

exception is perhaps better supported by practical considerations than on principle. A minority of courts consider it enlargement of equity jurisdiction by judicial decision. Even so, it does not run counter to any fundamental principle of government. But to extend the doctrine so as to entertain a private suit to restrain the acts of a co-ordinate branch of the government, the injurious effects of which acts are public only, we can not regard otherwise than as of usurpation of power not conferred. It is true that there is an analogy between the State and a municipal corporation, and an analogy between a municipal corporation and a private corporation. Hence, on the mathematical principle that things equal to the same thing are equal to each other, a number of courts have concluded that the rule applied to municipal corporations should be applied to the State. They overlook the dual nature of municipal corporations as agencies of sovereignty and as business corporations. The analogy between them and private corporations appears only as we view them in their business and property-owning capacity. When viewed as repositories of sovereign power, the analogy ceases. But the analogy is the foundation supporting the doctrine of taxpayers' suits. We have not been accustomed to recognize any such dual nature of the State. Its business is conducted in its sovereign capacity. The bridge which joins the private corporation and the municipal corporation, and enables the taxpayer to make that crossing, breaks down between the municipal corporation and the State. Not having found any legal or logical principle to support a taxpayer's suit to enjoin the expenditure of State funds, we are constrained to hold that he has no such right in this State."

For the reasons above given, we hold that the present suit, being against the officers in their official capacity, and not as individuals committing any trespass upon the petitioners, is in effect a suit against the State of Georgia without its consent, and that the action can not be maintained. It is argued in the brief of counsel for the plaintiffs, that, even if the suit can not be maintained against the other defendants, it lies against the Regents of the University System of Georgia, because, it is asserted, that board is a body corporate and subject to suit. In *First District A. & M. School* v. *Reynolds,* 11 *Ga. App.* 650 (75 S. E. 1060), it was held that such a school was a department of the University

of Georgia, and that the University of Georgia was expressly incorporated as a body corporate and politic, with the right to sue and be sued, etc. In *State of Georgia* v. *Regents of the University*, 179 *Ga.* 210, 222 (175 S. E. 567), it was said: "The university corporation is not the State, or a part of the State, or an agency of the State. It is a mere creature of the State, and a debt of the creature does not stand upon a level with the creator and never can rise thereto. It is first, last, and always a debt of the creature and in no sense a debt of the creator. The 'Regents of the University System of Georgia' is a corporation," etc. From the above it may be argued that in the present case a suit against the "Regents of the University System of Georgia" in no wise involves the State; but since the decisions in the two cases above mentioned the General Assembly of Georgia, by the act of 1935 (Ga. L. 1935, p. 171), has defined the status of the Regents of the University System of Georgia and of the members of the Board of Regents, as follows: "That the corporation created under section 45 of the act approved August 25, 1931, as embodied in title 32, section 32-101, of the Code of Georgia of 1933, and known as 'Regents of the University System of Georgia,' is hereby declared to be a governmental agency of the State of Georgia, and all property held by said corporation under said act of August 25, 1931, as embodied in title 32 of the Code of Georgia of 1933, is hereby declared to be the property of the State of Georgia, and subject to all the limitations and restrictions imposed upon other property of the State of Georgia by the constitution and laws of this State. The members of the Board of Regents of the University System of Georgia, as provided for in said act, are hereby declared to be public officers of the State of Georgia and subject, in all their actions as such, to all the limitations and restrictions imposed by the constitution and laws of this State upon other public officers." It is a matter of current history that the act of 1935 from which we have quoted was adopted by the General Assembly and approved by the Governor for the purpose of changing the status and relation which the Regents of the University System of Georgia sustained to the State under the previous law, as pointed out in the decision of this court in *State* v. *Regents,* supra; and since the passage of that act it is apparent that the Regents of the University System of Georgia is now, and was at

the time of the filing of the present suit, a governmental agency of the State in charge of property of which the title is in the State. It necessarily follows that a suit to restrain and enjoin that body, as prayed by the petitioners, is in effect a suit against the State, which can not be maintained against its will. Because of what we have said in all of the above, it is the opinion of this court that the court below did not err in sustaining the general demurrer and in dismissing the petition for injunction.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*

BELL, J., concurs in the result.