309 Ga. 899
FINAL COPY

S20G0472.  BOARD OF COMMISSIONERS OF LOWNDES COUNTY v. MAYOR AND COUNCIL OF THE CITY OF VALDOSTA et al.

PETERSON, Justice.

The Georgia Constitution allows only the General Assembly to waive the State's sovereign immunity. We have repeatedly refused invitations to invent exceptions to that rule. But that rule requires waiver only for claims that sovereign immunity actually bars. And, as we have repeatedly explained, sovereign immunity has never barred most individual-capacity claims against state employees and officials for prospective injunctive and declaratory relief based on allegations that those defendants are acting beyond their legal authority. At least some of the claims in this case are precisely those kinds of claims.

One narrow limitation on such claims is that the State cannot be the "real party in interest." The Court of Appeals held that the relief sought here by a Georgia county against state officials would

actually control the actions of the State and potentially affect state expenditures; the Court of Appeals thus concluded that the State is the real party in interest and that sovereign immunity bars the county's claims for injunctive and declaratory relief against the state officials in their individual capacities. See *Bd. of Commrs. of Lowndes County v. Mayor and Council of the City of Valdosta*, 352 Ga. App. 391, 395-396 (1) (834 SE2d 890) (2019). But the real-party-in-interest limitation is not so broad; our case law has applied it primarily when the claimed relief would control or take the State's real property or interfere with contracts to which the State is a party. No such relief is sought here, and applying the limitation as broadly as the State seeks would eviscerate Georgians' well-established rights to seek redress against their government. We therefore reverse the Court of Appeals and hold that sovereign immunity does not bar the claims at issue in this case.

1. *Background.*

Lowndes County sued the commissioner of the Georgia Department of Community Affairs ("DCA") and members of the DCA

board over DCA's application of the Service Delivery Strategy Act ("SDS Act"), OCGA § 36-70-1 et seq. Few details of the statute are relevant to the sovereign immunity issue we decide today, but the SDS Act authorizes and promotes coordination and comprehensive planning among municipal and county governments to "minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use." OCGA § 36-70-20; see also OCGA § 36-70-1. Counties and municipalities that approve a local government service delivery strategy pursuant to OCGA § 36-70-25 must "review, and revise if necessary, the approved strategy" in certain circumstances. OCGA § 36-70-28 (b).[1] No state-administered financial assistance or grant,

---

[1] In particular, OCGA § 36-70-28 (b) provides as follows:
Each county and affected municipality shall review, and revise if necessary, the approved strategy:
(1) In conjunction with updates of the comprehensive plan as required by Article 1 of this chapter;
(2) Whenever necessary to change service delivery or revenue distribution arrangements;
(3) Whenever necessary due to changes in revenue distribution arrangements;

loan, or permit shall be issued to any local government or authority that is not included in a service delivery strategy "verified" by DCA. See OCGA § 36-70-27 (a) (1); see also OCGA §§ 36-70-27 (c), 36-70-2 (4). OCGA § 36-70-25.1 provides a statutory process for mediation and dispute resolution if affected local governments cannot reach an agreement after the imposition of sanctions provided in OCGA § 36-70-27.

Lowndes County and the cities within the County ("the Cities") operated under a service delivery strategy agreement implemented in 2008. The 2008 Strategy Agreement provided that it "shall become effective July 1, 2008 and shall remain in force and effect until reviewed and revised by the parties in accordance with the Act." In June 2016, a new draft Strategy Agreement was circulated by Lowndes County to the Cities. On November 1, 2016, when DCA

---

(4) In the event of the creation, abolition, or consolidation of local governments;
(5) When the existing service delivery strategy agreement expires; or
(6) Whenever the county and affected municipalities agree to revise the strategy.

had not received communication from the County and Cities that they had agreed either to revise their Strategy Agreement or to extend the existing one, DCA notified the County and Cities that they would be ineligible for state-administered financial assistance, grants, loans, or permits until DCA could verify that Lowndes County and the Cities had done so.

The County sued the mayors and councils of the Cities, DCA, and DCA commissioner Camila Knowles, seeking declaratory, injunctive, and mandamus relief, as well as specific performance. The complaint argued that the 2008 Strategy Agreement remains in effect, and that the County and Cities remained eligible for state-administered financial assistance, grants, loans, and permits. After DCA and Knowles filed a motion to dismiss, the County filed an amended complaint, adding members of the DCA board as defendants. Count 1 of the amended complaint seeks declaratory relief against all defendants in their individual and/or official capacities, and Count 6 seeks injunctive relief against Knowles and the DCA board members in their individual capacities. The amended

complaint also removed DCA as a party.

Knowles and the DCA board members filed a motion to dismiss the amended complaint on the basis that sovereign immunity barred the claims for injunctive and declaratory relief. They argued that those claims actually seek to order Knowles and the DCA board members to take action in their official capacities. The trial court granted the motion to dismiss.

The Court of Appeals affirmed. See *Lowndes County*, 352 Ga. App. at 391. The Court of Appeals held that DCA, not Knowles and the DCA board members, "is the real party in interest," and thus sovereign immunity barred the claims against them. Id. at 395 (1). The court reasoned that the relief sought would "control the actions of the State" and could "only be granted by the State," whereas "Knowles and the DCA Board Members have no statutory authority in their individual capacities under the SDS Act to direct DCA to do anything." Id. at 396 (1). We granted the County's petition for a writ of certiorari to address the sovereign immunity issue, and we now reverse.

2. *Sovereign immunity generally does not apply to individual-capacity claims for prospective declaratory and injunctive relief against state officers and employees alleged to be acting without legal authority.*

(a) Sovereign immunity bars claims against the State, its departments and agencies, and its officers and employees when sued in their official capacities.

As we recounted at length in *Lathrop v. Deal*, 301 Ga. 408 (801 SE2d 867) (2017), the doctrine of sovereign immunity "was imbedded in the common law of England" and adopted by Georgia as its own after the War for American Independence. Id. at 411-412 (II) (A) (citation and punctuation omitted). Understood "broadly as a principle derived from the very nature of sovereignty," the doctrine at common law generally provided that "[t]he State could not, without its own express consent, be subjected to an action of any kind." Id. at 412-413 (II) (A) (citations and punctuation omitted). At common law, the doctrine barred not only suits against the State in its own name, but also suits against the State's departments, agencies, and officers in their official capacities, "even when it was alleged that the officers had acted without legal authority." Id. at

413 (II) (A). The doctrine of sovereign immunity was broad enough at common law "to bar some suits against public officers in their individual capacities, although only to the extent that the State itself could be said to be the real party in interest." Id. at 413-414 (II) (A). "The doctrine sometimes worked to bar suits, for instance, in which the relief sought would tend to impair or affect the property or contractual interests of the State." Id. at 414 (II) (A) (citing *Linder v. Ponder*, 209 Ga. 746, 747-748 (75 SE2d 814) (1953); *Musgrove v. Ga. R. & Banking Co.*, 204 Ga. 139, 157 (49 SE2d 26) (1948); *Printup v. Cherokee R. Co.*, 45 Ga. 365, 367 (1872)). "The doctrine of sovereign immunity at common law generally was inapplicable, however, in cases in which state officers in their *individual capacities* were alleged to have acted without legal authority, even if they acted under color of their offices." Id. (emphasis added).

The common law doctrine of sovereign immunity has been enshrined in the Georgia Constitution. In 1974, the voters ratified a constitutional amendment preserving the doctrine. See *Lathrop*, 301 Ga. at 419-420 (II) (B). And although the 1983 Constitution changed

the means by which sovereign immunity could be waived, a 1991 amendment "carried forward the constitutional reservation of sovereign immunity at common law as it was understood in Georgia, using the same language as the original Constitution of 1983 to reaffirm that 'sovereign immunity extends to the state and all of its departments and agencies.'" Id. at 420-423 (II) (B) (quoting Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (as amended)). Following the 1974 amendment, we made clear that the sovereign immunity preserved by the 1974 amendment and the common law doctrine as previously understood by Georgia courts were one and the same and could not be modified by this Court. See *Sheley v. Bd. of Pub. Ed. for City of Savannah*, 233 Ga. 487, 488 (212 SE2d 627) (1975). "Consistent with these understandings, after the doctrine of sovereign immunity was given constitutional status, this Court continued to observe the traditional distinction between suits against state officers in their official capacities, which are barred by sovereign immunity, and those against state officers in their individual capacities, which generally are not." *Lathrop*, 301 Ga. at

420 (II) (B) (citing *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878) (1980)).

We strayed for a time from the understanding that sovereign immunity, now given constitutional status, was not subject to alteration by this Court. In 1995, purportedly to avoid "confusion" stemming from the use of "legal fictions and circular reasoning," and "permit a more logical analysis," we held that a suit against state officers in their official capacities for injunctive relief to restrain an illegal act fell within an "exception" to sovereign immunity. *IBM Corp. v. Evans*, 265 Ga. 215, 216 (1) (453 SE2d 706) (1995). But we corrected course in 2014, reaffirming that "the clear language of our Constitution authorizes only the General Assembly to waive sovereign immunity," without "exception." *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 597 (2) (755 SE2d 184) (2014). We since have made clear that, absent some waiver by the Georgia Constitution itself or the statutory law, the doctrine of sovereign immunity bars suits for injunctive and declaratory relief against the State, its departments, and its officers

in their official capacities, including suits for injunctive relief from the enforcement of allegedly unconstitutional laws. See *Lathrop*, 301 Ga. at 444 (IV); *Olvera v. Univ. System of Ga. Bd. of Regents*, 298 Ga. 425, 427-428 (782 SE2d 436) (2016); *Sustainable Coast*, 294 Ga. at 602-603 (2).

(b) Sovereign immunity generally does not bar individual-capacity claims against state officers and employees for prospective declaratory and injunctive relief.

Critically, however, we also have repeatedly made clear that sovereign immunity does not bar suits for injunctive and declaratory relief against state officials in their individual capacities. See *Lathrop*, 301 Ga. at 444 (IV) ("There are . . . prospective remedies that the plaintiff-physicians may pursue against state officers in their individual capacities."); *Sustainable Coast*, 294 Ga. at 603 (2) ("Our decision today does not mean that citizens aggrieved by the unlawful conduct of public officers are without recourse. It means only that they must seek relief against such officers in their individual capacities."); *Olvera*, 298 Ga. at 428 (same). As Presiding Justice Benham explained in his partial dissent from our opinion in

*IBM*,

> [i]t is a long-standing principle of Georgia law that sovereign immunity is not applicable where an injunction is sought to prevent the commission of an alleged wrongful act by an officer of the state acting under color of office but without lawful authority and beyond the scope of official power because such a suit is not against the state, but against an individual stripped of his official character.

265 Ga. at 220 (Benham, P.J., concurring in part and dissenting in part) (citation and emphasis omitted) (quoted in *Lathrop*, 301 Ga. at 423-424 (II) (C)). Presiding Justice Benham was right; that principle is longstanding in our law and is a part of the sovereign immunity that the Georgia Constitution now preserves. See, e.g., *Undercofler v. Eastern Air Lines, Inc.*, 221 Ga. 824, 829 (1) (147 SE2d 436) (1966) (complaint for injunctive and declaratory relief alleging that defendant state officials were attempting to assess taxes in violation of state statute fell within rule that "suit may be maintained against officers or agents personally, because, while claiming to act officially, they have committed[,] or they threaten to commit[,] wrong or injury to the person or property of plaintiff, either without right and authority or contrary to the statute under which they

purport to act" (citation and punctuation omitted)); *Holcombe v. Ga. Milk Producers Confederation*, 188 Ga. 358, 362-364 (1) (3 SE2d 705) (1939) (suit for injunctive relief alleging that members of milk-control board sued "as individuals" were acting under color of authority of unconstitutional statute was not subject to demurrer as one against the State); *Dennison Mfg. Co. v. Wright*, 156 Ga. 789, 793-794 (1) (120 SE 120) (1923) (suit characterized in *Holcombe*, 188 Ga. at 362, as one against state comptroller-general "as an individual" seeking to "enjoin him from committing acts which it was contended . . . would be entirely without constitutional authority" was not a suit against the State); *Irwin v. Arrendale*, 117 Ga. App. 1, 2-3 (2) (159 SE2d 719) (1967) (listing cases).[2]

(c) Sovereign immunity still bars individual-capacity

---

[2] As mentioned above, in 1784 Georgia adopted the common law of England as of May 14, 1776, as its own as a general matter, such that arguably this Court could not alter it at all. See *Lathrop*, 301 Ga. at 412 (II) (A) n.9. But to the extent that we ever had the authority to alter the parameters of sovereign immunity or recognize new exceptions, the constitutionalization of sovereign immunity took away any such authority. See *Sustainable Coast*, 294 Ga. at 601 (2). But that does not mean that our pre-1974 case law is irrelevant; indeed, it is the only way that we can discern the nature of the sovereign immunity that the Georgia Constitution now preserves. The 1974 amendment did not change the *scope* of sovereign immunity; it merely gave it a new constitutional *status* that put changes beyond the reach of the courts.

claims when the State is the real party in interest, but that exception to the general rule is narrow.

As noted above, at common law the doctrine of sovereign immunity barred some suits against public officers in their individual capacities to the extent that the State itself could be said to be the real party in interest. See *Lathrop*, 301 Ga. at 413-414 (II) (A). The Court of Appeals held below that the State is the real party in interest here because the relief sought would "'operate to control the action of the State or subject it to liability.'" *Lowndes County*, 352 Ga. App. at 395-396 (1) (quoting *Moore v. Robinson,* 206 Ga. 27, 37 (2) (55 SE2d 711) (1949)).[3] Although we have used such imprecise language before, see, e.g., *Musgrove*, 204 Ga. at 155, our more careful precedent makes clear that sovereign immunity applies to individual-capacity claims for injunctive or declaratory relief in only "limited" circumstances. *Lathrop*, 301 Ga. at 414 (II) (A). The limited circumstances in which we have held that sovereign immunity is

---

[3] The Court in *Moore* held that injunctive relief to prevent members of the Board of Chiropractic Examiners from issuing licenses based on qualifications less than those fixed by statute would *not* "operate to control the action of the State." 206 Ga. at 37 (2).

applicable under a real-party-in-interest theory primarily have included attempts to control the real property rights and contractual obligations of the State. See *Linder*, 209 Ga. at 746-748 (action against state agriculture commissioner in his individual capacity seeking to enjoin him from using state land for State Farmer's Market subject to demurrer; "[s]ince the grantee, the State, is not a party to this action, no cancellation of the State's deed can be decreed"); *Musgrove*, 204 Ga. at 158-159 (action against state revenue commissioner seeking declaration that plaintiff's railroad charter is binding upon the State and its officers in perpetuity and injunction against collection of ad valorem taxes on certain railroad properties is one against the State and therefore not maintainable, even if defendant is deemed to be named in his individual capacity); *Roberts v. Barwick*, 187 Ga. 691, 695-696 (2) (1 SE2d 713) (1939) (suit against state agriculture commissioner "not as individual" for cancellation of lease is barred by sovereign immunity because under relief sought "the State would thereby be dispossessed of property now in its possession"); *Cannon v. Montgomery*, 184 Ga. 588, 593-

594 (2) (192 SE 206) (1937) (error to grant injunction preventing occupation of fish hatchery by caretaker acting on behalf of State Department of Game and Fish); *Printup*, 45 Ga. at 367 (railroad company cannot seek injunction to prevent purported agent of the State from taking possession of road).[4]

Applying the real-party-in-interest exception more broadly than this precedent supports would yield a rule wholly incompatible with our longstanding precedent allowing individual-capacity claims for injunctive and declaratory relief. Indeed, any injunction or declaration as to an employee or official of the State could be said to "control the actions of the State" to some extent, and when that employee or official is paid by state funds or administers state-funded programs, any such relief could, at least indirectly, involve the expenditure of State resources.

Knowles and the DCA board members (the "State Defendants")

---

[4] We note that the Georgia Constitution now expressly waives the State's defense of sovereign immunity "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) (as amended).

rely on *Peters v. Boggs*, 217 Ga. 471, 474-475 (123 SE2d 258) (1961), to argue that the State is the real party in interest when a claim seeks to control the disbursement of state funds, even when the claim names state officials in their individual capacities. In *Peters*, this Court concluded that an action seeking to enjoin state officers and agents sued in their individual capacities from providing state support to integrated public schools was barred by sovereign immunity. See id. at 472-473. But it appears that *Peters* involved a request for an injunction as to the use of some real property of the State, not merely state funds. See id. at 472 (noting action sought injunction forbidding the use of any state-owned "property or equipment" by any integrated school). Moreover, to the extent that *Peters* held that sovereign immunity barred an injunction against the state officials' expenditure of state money, that decision stands for nothing more than the principle that sovereign immunity protects state officials from an injunction that prevents them from spending state funds specifically appropriated for the purpose in

question.[5] Id. at 474-475 (2) (distinguishing *Ramsey v. Hamilton*, 181 Ga. 365 (182 SE 392) (1935), "where there was no specific appropriation by the General Assembly of the funds involved").[6] Again, applying the real-party-in-interest exception as broadly as the State Defendants argue would swallow our precedent generally allowing claims for injunctive and declaratory relief against state officials sued individually.

3.  *Sovereign immunity does not bar the individual-capacity claims for prospective declaratory and injunctive relief asserted here.*

Applying this principle to the allegations made by the County here, we conclude that the Court of Appeals erred by affirming the dismissal of the County's claims against the State Defendants in their individual capacities on sovereign immunity grounds. The County's amended complaint alleges that, under OCGA § 36-70-25.1

---

[5] As discussed in more detail below, this sort of relief is not at issue here, so we need not consider whether that principle is correct. We express no opinion as to whether *Peters* was rightly decided.

[6] We note that our opinion in *Ramsey* indicates that the state officers were sued in that case in their official capacities, not individually. See 181 Ga. at 368 (1).

(f) and the terms of the 2008 Strategy Agreement itself, the agreement remains in effect, and the County and Cities thus remain eligible for state-administered financial assistance, grants, loans, and permits. The amended complaint thus alleges that sanctions imposed against the County and the Cities were not imposed "by or in accordance with law." The amended complaint seeks a declaration against the State Defendants in their individual capacities that the County and Cities remain eligible for state-administered financial assistance, grants, loans, and permits and that the sanctions have not been legally imposed. The amended complaint also seeks an injunction against Knowles and the DCA board members in their individual capacities, ordering them to direct DCA to stop notifying state departments and agencies that the County and Cities are ineligible for state financial support and permits. The County thus is seeking declaratory and injunctive relief against the State Defendants in their individual capacities for "the unlawful conduct of public officers," which, as we made clear in *Sustainable Coast*, is not barred by sovereign immunity. 294 Ga. at 603 (2); see also

*Lathrop*, 301 Ga. at 444 (IV); *Olvera*, 298 Ga. at 428.

The State Defendants and the Cities dispute the County's allegation that the State Defendants have acted without legal authority. But we need not consider whether the County is correct in its allegations about the legality of the State Defendants' actions in order to determine that its claims are not barred by sovereign immunity at the pleading stage. The trial court dismissed the claims for injunctive and declaratory relief against the State Defendants based on its conclusion that they were really claims against the State, and the Court of Appeals agreed. See *Lowndes County*, 352 Ga. App. at 395-396 (1). Neither lower court concluded that dismissal of the claims for injunctive and declaratory relief was warranted on the basis that the County had not shown that the State Defendants were acting outside their lawful authority. That is a question to be decided on remand as the case goes forward.[7]

---

[7] The trial court dismissed claims for mandamus relief against the State Defendants on the basis that the County could not show that it had a clear legal right to the relief requested or that the State Defendants had failed to perform a clear legal duty. The Court of Appeals affirmed that ruling. See

The State Defendants argue that the Court of Appeals properly concluded that sovereign immunity did bar the claims against them because the State is the real party in interest. The Court of Appeals concluded that sovereign immunity bars the County's claims for injunctive and declaratory relief against the State Defendants here because the relief sought would "control the action of the State[.]"*Lowndes County*, 352 Ga. App. at 395-396 (1). And the State Defendants argue that the State is the real party in interest because the relief sought by the County would directly impact the State "and its obligation to make financial disbursements." But the relief the County seeks would not alter the title, possession, or usage of any real property of the State or interfere with any state contracts.

To the extent that an individual-capacity claim for injunctive or declaratory relief would ever fall within the real-party-in-interest

---

*Lowndes County*, 352 Ga. App. at 397-399 (2). But we granted certiorari only as to the Court of Appeals's ruling on the claims for injunctive and declaratory relief against the State Defendants. And we express no opinion as to the extent to which the lower court's conclusions regarding the mandamus claims against the State Defendants may affect the viability of the claims for injunctive and declaratory relief against the State Defendants.

exception because the relief sought would affect the expenditure of funds — a point we do not decide today — the County does not seek to block any disbursement of specifically appropriated funds. And the County does not seek to require any disbursement of funds, either. Rather, it asks for a declaration that it remains eligible for funds, and for an injunction to stop the State Defendants from broadcasting that the County is categorically ineligible. There is no indication in the complaint that such relief would entitle the County to specific funds automatically and without any other action by someone other than the State Defendants. Indeed, the injunction sought by the complaint would stop the State Defendants from informing other "departments and agencies of the State of Georgia" that the County is categorically ineligible for funds. The possibility that the relief sought might ultimately result in the expenditure of some state funds is not enough to bring this case within the real-party-in-interest exception.

The State Defendants also argue that the limited statutory roles of the DCA commissioner and members of the DCA board

indicate that the County is seeking relief against the State itself, not any particular individual. The State Defendants emphasize that, by statute, DCA itself has the duty to "[d]evelop, promote, sustain, and assist local governments in the performance of their duties . . . including among such duties and responsibilities of local governments coordinated and comprehensive planning[.]" OCGA § 50-8-3 (b) (5). And with respect to the SDS Act, the State Defendants note, the statute provides that "[t]he *department* shall . . . verify" that a service delivery strategy includes certain statutory components. OCGA § 36-70-26 (emphasis added).

But by statute the DCA commissioner is the department's "chief executive officer and administrative head." OCGA § 50-8-5 (a). The commissioner's powers include, among others, "[t]he power and authority to take or cause to be taken any or all action . . . necessary to perform any duties, responsibilities, or functions which the department is authorized by law to perform" and "[t]he power and authority to make, promulgate, enforce, or otherwise require compliance with any and all rules, regulations, procedures, or

directives necessary to perform any local government services, to carry into effect the minimum standards and procedures for coordinated and comprehensive planning, or otherwise necessary to perform any duties, responsibilities, or functions which the department is authorized by law to perform or to exercise any power or authority which the department is authorized by law to exercise[.]" OCGA § 50-8-5 (b) (1), (2). Moreover, "injunctions run by operation of law not only to the parties, but also to 'their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order by personal service or otherwise.'" *Lathrop*, 301 Ga. at 444 (III) (C) n.32 (quoting OCGA § 9-11-65 (d)). And the DCA board "establish[es] policy and direction for the department and shall perform such other functions as may be provided or authorized by law." OCGA § 50-8-4 (a). The DCA board also has the power to hire and fire the DCA commissioner, see OCGA § 50-8-5 (a), and by this appointment and removal power has authority over the actions of the DCA commissioner.

The State Defendants suggest that the fact that a DCA staffer, and not Knowles or any of the DCA board members, sent the notice to the County and Cities informing them of sanctions means that the State is the real party in interest. Of course, "given that the purpose of an injunction is to restrain 'a threatened . . . act of a private individual . . . which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law[,]' OCGA § 9-5-1, [the County] must show that the person [it] has sued is the one committing the act at issue[.]" *Williams v. DeKalb County*, 308 Ga. 265, 273 (3) (b) (ii) (840 SE2d 423) (2020). But the County's amended complaint alleges that Knowles and the DCA board members "are permitting DCA to post on its website notice that the County and the Cities are ineligible for state administered financial assistance, grants, loans, and permits, contrary to OCGA § 36-70-25.1 (f), the terms and provisions of the existing strategy agreement, and OCGA § 36-70-27." And nothing in the complaint claims that the alleged illegal actions are not subject to the direction and control of the DCA commissioner or that the commissioner's direction and

control over this conduct is somehow exempt from the DCA board's general authority to hire and fire the commissioner. In any event, to the extent that the actions of a different or additional official must be restrained to give the County the relief that it seeks, that does not mean that the State is the real party in interest such that sovereign immunity bars the County's claims; it merely means that the claims may be subject to dismissal on other grounds.[8]

---

[8] The trial court and the Court of Appeals noted that Knowles is no longer the commissioner of DCA, and several State Defendants are no longer DCA board members. See *Lowndes County*, 352 Ga. App. at 396 (1). The Court of Appeals concluded that those persons "have no authority in their individual capacities to direct DCA to do anything." Id. And the State Defendants argue that the appeal as to those individuals should be dismissed as moot. See *Ga. Dept. of Human Svcs. v. Addison*, 304 Ga. 425, 428 (1) n.5 (819 SE2d 20) (2018) (where plaintiffs acknowledged that defendant was no longer employed by the State, "he [could] no longer give the plaintiffs any of the relief they [sought]" and the "appeal as to him in his individual capacity [was] therefore dismissed as moot"). This case is before us on certiorari on the limited question of whether the County's claims for injunctive and declaratory relief against the State Defendants were properly dismissed on sovereign immunity grounds, however, and we leave it for the trial court to sort out those issues, as well as whether the County may amend its complaint to name other defendants in their individual capacities, in the first instance.

The State Defendants also posit that the issue raised by this appeal may become moot following the November 2020 election, when Georgia voters will have the opportunity to amend the state Constitution to waive sovereign immunity for declaratory relief from state actions that are unconstitutional or outside the scope of lawful authority. See H.R. 1023 (2019-2020 Reg. Session). But whether future events might moot a case does not render a case moot now, and we express no opinion about the proper answer to the sovereign immunity

The Court of Appeals erred by concluding that the County's claims for injunctive and declaratory relief against Knowles and the DCA board members are barred by sovereign immunity. We reverse.

*Judgment reversed. All the Justices concur, except McMillian, J., disqualified.*

Decided September 28, 2020.

Certiorari to the Court of Appeals of Georgia — 352 Ga. App. 391.

*Elliott, Blackburn & Gooding, James L. Elliott, Walter G. Elliott II*, for appellant.

*Coleman Talley, George T. Talley, Timothy M. Tanner; Smith, Welch, Webb & White, Andrew (Andy) J. Welch III, Warren M. Tillery, Brandon F. Palmer; Christopher M. Carr, Attorney General, Logan B. Winkles, Senior Assistant Attorney General, Julie A. Jacobs, Assistant Attorney General*, for appellees.

---

questions answered today in the event the proposed amendment becomes effective.